Diane **FOLEY** d/b/a Finishes, Inc.,
Appellant and Appellee,

v.

Rick **PARLIER**, Appellee
and Appellant.

No. 2–01–056–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 7, 2002.

Rehearing Overruled March 14, 2002.

Hammerle Finley, Robert S. Morris, Denton, for Appellant.

Brotherton & Davis, Kelly M. Davis, William J. Brotherton, Highland Village, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. INTRODUCTION

Appellant Diane Foley appeals from a judgment in favor of Appellee Rick Parlier for actual and exemplary damages for fraud. In Foley's first issue, she argues that the evidence is both legally and factually insufficient to support the jury's finding of fraud. In Foley's second and third issues, she argues that there is factually insufficient evidence to support the jury's finding of exemplary damages and that the exemplary damages awarded were excessive. We overrule all three of Foley's issues.

In a separate appeal, Parlier, as Appellee, advances two issues. Parlier's first issue maintains that the trial court erred in requiring him to elect between remedies for breach of contract and fraud. Parlier's second issue contests the trial court's granting of a $750 remittitur on the jury's finding of actual damages for fraud. We overrule Parlier's first issue and sustain his second issue.

### II. BACKGROUND

#### A. *Factual Background*

Foley owns and operates a business named "Finishes," which provides installation of ceramic tile in commercial establishments in the Dallas and Fort Worth area. Parlier, a resident of California, possessed a California contractor's license and maintained a residential tile business in that state. After being introduced in 1996, Foley and Parlier began to discuss doing business together. In 1999, Foley and Parlier began e-mailing each other

about Foley's business. For three months, Foley and Parlier negotiated the terms of a potential partnership and ultimate purchase by Parlier of Foley's business.

One of many e-mail conversations focused on how much money Parlier could make on a monthly basis. Parlier expressed to Foley that he needed to make at least $6,000 a month to make it feasible for him to move to Texas and to pay existing bills. Foley assured Parlier that he would be able to make "well over [that] amount." Foley sent Parlier photocopies of several checks, representing to him that those checks were "draws" on work done for customers. Foley told Parlier that those checks represented what he could expect to make in the business. Foley later clarified, in a handwritten note to Parlier, that $65,000 was the best she made over a two-month period.

As further evidence of Finishes' profitability, Foley provided a list to Parlier of five purported contracts for work. Foley represented that these were existing contracts and that Parlier would receive a share of those contracts if he bought into the business. Parlier's share of the receivables to be generated by these contracts was represented by Foley to be $34,000, which Parlier calculated would give him $8,500 per month. Based on these representations, Parlier drove to Texas to determine if he wanted to invest in the business.

Parlier stayed in Texas and actually ran the business for several days. When he returned to California, Parlier concluded that he wanted to invest in Finishes. Parlier shut down his residential tile business and moved to Texas. Foley and Parlier entered into a contract. Under the terms of the contract, Parlier agreed to purchase Finishes from Foley for $40,000. Parlier would invest $20,000 for 49% ownership of the business. After an initial payment of $12,000, Parlier was to make monthly payments of $2,000 for the remaining balance out of his share of receivables obtained from the business. He would purchase the remaining 51% for an additional payment of $20,000 at the end of two years. Parlier's responsibility was to maintain the job sites. Foley's job was to bid and obtain contracts, and to train Parlier in these tasks as well as in the accounting side of the business.

The contract allocated 49% of the business profits to Parlier. The contract further provided that Finishes was to pay Parlier for various business expenses and provide a minimum of $1,500 a month for living expenses together with additional amounts for phone reimbursement, truck allowance, pager service, insurance, and operating expenses.

Parlier performed his contractual obligations, but did not receive any money from the profits or his monthly living allowance or expenses as promised. Ultimately, the business relationship soured. Termination of the relationship came about when Foley rebuffed Parlier's requests to see the current accounting records. Parlier insisted that, as a 49% partner, he had the right to hire an accountant to audit the company, which enraged Foley. She issued an ultimatum that if Parlier hired an accountant, their business relationship was over and the contract was null and void.

When Parlier eventually decided to hire an accountant, Foley, as per her ultimatum, issued a letter of termination and tendered a cashier's check to Parlier for the $12,000 he had initially invested. Parlier refused the $12,000, citing that he spent at least $20,000 in time and money coming to Texas from California. Parlier filed suit, alleging breach of contract and fraud by Foley in misrepresenting what Parlier would receive if he entered into the contract.

## B. *Procedural History*

The jury found that Foley breached the partnership contract and committed fraud. The jury found contract damages of $6,509.35 and attorney's fees of $43,750. The jury also awarded fraud damages of $12,750 and exemplary damages in the amount of $43,750.

The trial judge required Parlier to elect between fraud and breach of contract remedies. Parlier elected to recover his fraud damages of $12,750. The trial court then ordered a remittitur of $750 of the fraud damages. The trial court rendered judgment on the verdict for Parlier in the amount of $12,000 and for exemplary damages in the amount of $43,750. Due to the fraud election, the trial court did not award attorney's fees or breach of contract damages.

## III. DISCUSSION

### A. *Fraud*

■ In three issues, Foley contends that the evidence is legally and factually insufficient to support the jury's findings of fraud, that the evidence is not clearly and convincingly factually sufficient to support the jury's award of exemplary damages for fraud, and that the exemplary damages were excessive. Regarding fraud, Foley argues that her list of work contracts, her monthly income checks, and the representations associated with them, were not made fraudulently as Parlier contends.

### 1. Legal Sufficiency

Foley initially maintains that the evidence in support of the jury's finding of fraud is legally insufficient. Additionally, Foley argues that the evidence conclusively establishes the opposite. We disagree, and hold that the evidence is legally sufficient to support the jury's fraud finding.

■ In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Cont'l Coffee Prods. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Evidence is legally sufficient if there is more than a scintilla of evidence, or some evidence, to support the finding. *Cazarez,* 937 S.W.2d at 450; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

■ A no-evidence complaint may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Merrell Dow Pharms. Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *accord Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999) (citing Robert W. Calvert, *"No Evidence"* and *"Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992).

■ In Texas, the elements of fraud are (1) that a material representation was made; (2) that was false; (3) that, when spoken, the speaker knew it was false or made it recklessly without any knowledge of its truth as a positive assertion; (4) it

was made with the intention that it should be acted upon by the party; (5) the party acted in reliance upon that statement; and (6) the party thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983); *Star Houston, Inc. v. Shevack,* 886 S.W.2d 414, 417 (Tex.App.-Houston [1st Dist.] 1994), *writ denied,* 907 S.W.2d 452 (Tex.1995).

Foley argues that her representations regarding her work contracts were not fraudulent. In support of her argument, Foley relies upon the following testimony of Parlier: "You're not telling the jury that she did not have those contracts at the time she gave this list to you, are you? A: Correct, right." However, the full context of Parlier's testimony was as follows:

> Q. Okay. Now, you don't know and you're not telling the jury specifically that she did not have those contracts either in process or in hand at the time she gave you this list, right?
>
> A. When she gave me this list of the contracts, she told me that's what she had.
>
> Q. She gave those to you—listen to my question. You're not telling the jury that she did not have those contracts at the time she gave this list to you, are you?
>
> A. Correct, right.

In the list provided to Parlier, Foley listed the J.N. Kent–Townley project and the GLF–DART contract as two of her existing work contracts. However, Foley, herself admitted: "Q. And you're telling the Court today that you never had a contract for the J.N. Kent–Townley project, right? A. That's correct. Q. And what about the GLF–DART contract, did you ever have that one? A. No, ma'am."

Parlier testified that one of the factors he relied upon was Foley's representation that she had five contracts valued at a total gross revenue of $172,190. Parlier also testified that he relied upon copies of checks Foley furnished him as proof of the income of the business and that she misrepresented those checks. Parlier further testified that the checks in question were provided in order to prove to Parlier that Foley made a sufficient amount of money to make it profitable for him to buy the business. Foley insists that there was no evidence of fraud regarding her statements about the monthly income checks and relies upon a portion of Parlier's testimony to support her argument: "Q. And through the process of this litigation, have you discovered anything about these checks that was misrepresented to you? A. The only thing I found out is that I haven't seen this kind of money since I arrived."

Additional testimony from Parlier provides evidence of Foley's fraudulent actions. During direct examination about the checks at issue, the following exchange occurred:

> Q. And did Ms. Foley ever tell you anything about these draws other than what was represented in the letter?
>
> A. Pretty much this is the kind of money I could expect to be making when I came out. That's the reason why she sent these to me was to show me it was a good business to buy into.

Parlier's testimony reveals that Foley utilized the checks to misrepresent the company's monthly profit. Parlier testified that when he asked if he would make more than $6,000 per month, Foley assured him he would be able to make over $6,000 a month. Parlier attested, "She told me and assured me I would be able to make well over the amount that I was requesting before I came out to—to get involved in the business." After counsel asked about the checks and what they meant to him, Parlier responded, "Well,

... those checks show large amounts of money. $15–, $30–, $40–, $65,000, one was for $80,000, and these were monthly income checks. So looking at that, I'm thinking, well this is a very, very good business."

In light of the above evidence, and considering only the evidence and inferences that lend support to the jury's verdict, we hold that there is more than a scintilla of evidence to support the jury's fraud finding. *Cazarez*, 937 S.W.2d at 450.

**2. Factual Sufficiency**

Foley next asserts that the evidence is too weak, or the evidence to the contrary is so overwhelming, that it does not support the jury's fraud finding. She relies on eight portions of the record in support of her argument. Foley first cites her e-mail to Parlier stating, in pertinent part, "Assets, I showed you on paper the new contracts that were in place and to be written in the total amount that you have in your possession." Second, Foley again relies upon Parlier's testimony that, "the only thing I found out is that I haven't seen this kind of money since I arrived." Third, Foley points to her own testimony that the J.N. Ken–Townley job was awarded to her and that she told Parlier that contract was terminated prior to Parlier and Foley entering into their partnership contract. Fourth, she again cites to Parlier's testimony with respect to Foley's representations concerning the five contracts. Fifth, she relies upon Parlier's testimony that because of job site scheduling, it was not Foley's fault that the projects were not ready for tile work during the period he was working with her. Sixth, she lists testimony of Parlier that he did not think Foley provided him with false business records. Seventh, Foley cites her own testimony that she had been told that she had the J.N. Kent–Townley contract at the time she listed it for Parlier. Eighth, Foley relies on her testimony that at the time she listed the GLF–DART contract she thought it was going to be awarded.

When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if the evidence is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Leibman v. Grand*, 981 S.W.2d 426, 429 (Tex.App.-El Paso 1998, no pet.). We cannot substitute our judgment when a jury verdict is grounded in sufficient evidence and will not substitute our judgment for that of the trier of fact merely because we might reach a different conclusion. *Cain*, 709 S.W.2d at 176; *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.-Austin 1992, no writ).

After careful review of the record, including the evidence favorable to Foley, we hold that the evidence is factually sufficient to support the jury's finding of fraud. Having held that the evidence was both legally and factually sufficient, we overrule Foley's first issue.

**B. *Exemplary Damages***

*1. Clear and Convincing Evidence of Fraud*

In Foley's second issue, she asserts that the evidence is too weak, or the evidence to the contrary is so overwhelming, that it does not support the jury's finding of fraud by clear and convincing evidence sufficient to support the finding of exemplary damages. The Civil Practice and Remedies Code requires a plaintiff seeking the recovery of exemplary

damages resulting from fraud to establish the elements of fraud "by clear and convincing evidence." [1] TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1). For exemplary damages purposes, clear and convincing evidence is defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.; accord Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979).

 This higher burden of proof in the trial court does not alter the appellate standard of review for factual sufficiency; it merely changes the weight of the evidence to support a finding or verdict. *In re D.T.,* 34 S.W.3d 625, 632 (Tex.App.-Fort Worth 2000, pet. denied). Our review of factual sufficiency of the evidence under a clear and convincing standard requires us to determine whether the evidence is sufficient to make the existence of the facts highly probable, not merely whether the evidence supporting the finding is sufficient to make the existence of fact more probable than not, as required by the preponderance standard. *Id.* That is, we must consider whether the evidence is sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established. *Id.; Faram v. Gervitz–Faram,* 895

S.W.2d 839, 843 (Tex.App.-Fort Worth 1995, no writ). As examined in the legal and factual sufficiency discussion above, the evidence in the record strongly supports the jury's firm belief in the truth of Parlier's fraud allegations.

 The evidence most favorable to the verdict has already been detailed with reference to the fraud claim; it is also relevant to the exemplary damages finding. Because we are required, whether reversing or affirming the award, to detail all the evidence and explain why the jury's finding is, or is not, supported by factually sufficient evidence or so against the great weight and preponderance of the evidence as to be manifestly unjust, we must also review any evidence and inferences that are against the verdict. *Moriel,* 879 S.W.2d at 31; *Peco Constr. Co. v. Guajardo,* 919 S.W.2d 736, 742 (Tex.App.-San Antonio 1996, writ denied).

The jury found, and the evidence supports, that Foley fraudulently induced Parlier to travel long distances and spend large amounts of money to buy her business, which was worth relatively little. There was also evidence that, while Parlier was working in the business, Foley was deducting personal expenses before calculating Parlier's share of receivables, including charges for her personal maid, utilities for her home, dry cleaning, massages, clothing, eye examinations, and trips to Mexico. The evidence further confirms that Foley's actions resulted in a fruitless venture for Parlier and required him to

---

1. The Texas Civil Practice and Remedies Code, section 41.003(a) states that:

 (a) Except as provided by Subsection (c), exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud....

TEX. CIV PRAC. & REM.CODE ANN. § 41.003(a)(1) (Vernon 1997). Consistent with this requirement the jury was instructed to answer jury question No. 8, as to the amount, if any, of exemplary damages to which Parlier should be awarded, only if there was clear and convincing evidence of fraud in answer to jury question No. 4.

return to California, virtually empty-handed.

However, the jury also heard Foley's testimony that, despite not actually having two of the contracts she listed for Parlier, Foley thought she was getting the two contracts she included on her client list. The jury further heard Foley testify that she did not misrepresent anything to Parlier about the monthly income checks she sent him. Despite hearing this evidence favorable to Foley, the jury chose to believe Parlier and found that fraud occurred.

Giving due deference to the jury's role in determining the weight and credibility to be given a witness's testimony, we hold that the jury's award of exemplary damages is supported by clear and convincing factually sufficient evidence. Having held that the evidence is sufficient to support the jury's firm belief in the finding of fraud, we overrule Foley's second issue.

*2. Were the Exemplary Damages Excessive?*

In Foley's third issue, she argues that the jury's award of exemplary damages was excessive. We hold that the exemplary damages are not excessive. Exemplary damages are imposed to punish a defendant for outrageous, malicious or otherwise morally culpable conduct. *Moriel*, 879 S.W.2d at 16. It is our duty as the reviewing court to ensure that defendants who deserve to be punished receive the appropriate level of punishment, rather than a punishment that is excessive or otherwise erroneous. *Id.* at 17; *see* W. Wendell Hall, *Standards of Review in Texas*, 29 St. Mary's L.J. 351, 467 (1998) (contrasting criminal and civil penalties and noting the role of reviewing courts in the distribution of punitive damages).

Exemplary damages must be reasonably proportioned to actual damages. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). There is, however, no set rule or ratio between the amount of actual and exemplary damages that is considered reasonable. *Id.* Therefore, we must make this determination on a case-by-case basis. *Id.*

In *Kraus*, the Supreme Court of Texas reiterated the factors to consider in determining whether an award of exemplary damages is reasonable. *Id.* Initially, we examine the nature of the wrong. *Id.* Secondly, we evaluate the character of the conduct of the wrong. *Id.* Thirdly, we consider the degree of the wrongdoer's culpability. *Id.* Fourthly, we contemplate the situation and sensibilities of the parties concerned. *Id.* Finally, we consider the extent to which such conduct offends a public sense of justice and propriety. *Id.* While we are guided by these factors, we recognize that they often overlap and are not always applicable to every award of exemplary damages. *Gray v. Allen*, 41 S.W.3d 330, 332 (Tex.App.-Fort Worth 2001, no pet.).

Foley's chief complaint is that the exemplary damages awarded were 3.6 times the actual damages. The amount of exemplary damages awarded rests largely in the discretion of the jury. *Southwestern Inv. Co. v. Neeley*, 452 S.W.2d 705, 708 (Tex.1970); *Gray*, 41 S.W.3d at 332; *Transmission Exch., Inc. v. Long*, 821 S.W.2d 265, 272 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

After applying the *Kraus* factors to the evidence, we cannot conclude that an exemplary damages finding of 3.6 times actual damages is an unreasonable proportion in this case. The nature and character of Foley's conduct in providing false contract information and misconstruing monthly income check information to Parlier was the type of conduct that could "offend[ ] a pub-

lic sense of justice and propriety." *Kraus,* 616 S.W.2d at 910. Furthermore, the ratio between actual and exemplary damages for the fraud claim is not excessive. *Guajardo,* 919 S.W.2d at 742. Significantly, by statute the amount is presumptively reasonable. *Id.; see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.007 & 41.008 (providing that exemplary damages are limited to two times actual damages or $200,000, whichever is greater, but there is no limitation on intentional torts). We overrule Foley's third issue.

## C. Parlier's Appeal

On his appeal, Parlier advances two arguments. He maintains that the trial court erred in requiring him to elect between breach of contract and fraud damages, and that the trial court erred in ordering a remittitur of $750. We overrule Parlier's argument that the trial court erred in requiring an election of remedies; however, we sustain his argument that the trial court erred in ordering remittitur.

### 1. Election of Remedies

 The trial court required Parlier to choose between recovery for breach of contract and fraud. In the post-verdict hearing on the parties' respective motions for judgment and judgment n.o.v., the trial court stated, "you're wanting the benefit of the contract and the damages for failure and for fraudulently entering into the contract. You can't have both. Either you're going to rely on the contract, or say there was no contract and rely on the fraud." Parlier elected to recover his fraud damages.

In answer to jury question number five, the jury awarded Parlier $6,509.35 in damages for breach of contract. In determining the amount of damages for breach of contract, the jury was instructed to consider the following elements of damages and none other:

(1) Diane Foley's failure to pay Rick Parlier 49% of the profits, if any;

(2) Diane Foley's failure to reimburse Rick Parlier for business expenses, if any, incurred in furthering his performance of the contract.

In answer to jury question number six, the jury awarded Parlier the amount of $12,750 as actual damages for fraud. In connection with the jury question on fraud damages, the jury was instructed to consider the following elements and none other:

(1) Rick Parlier's payment of $12,000;

(2) Rick Parlier's reasonable and necessary moving expenses from California to Texas; and

(3) Rick Parlier's loss of income resulting from time expended pursuing the ends of the contract.

 A plaintiff who has two inconsistent remedies must elect between them and pursue only one of them. DAN B. DOBBS, LAW OF REMEDIES DAMAGES-EQUITY-RESTITUTION § 9.4, at 712 (West Publishing Co., Hornbook Series 1993). Remedies are inconsistent when one of the remedies results from affirming the transaction and the other results from disaffirming the transaction. *Id.* For example, in a fraud case, the plaintiff can either claim rescission for fraud and get his property back or he can sue for damages and affirm the transaction. *Id.* at 713.

 A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a "double recovery." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182, 184 (Tex.1998); *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 367 (Tex.1987). In this context, a double recovery exists when a plaintiff obtains

more than one recovery for the same injury. *Waite Hill*, 959 S.W.2d at 184; *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex.1991). The prohibition against double recovery is a corollary of the rule that a party is entitled to but one satisfaction for the injuries sustained by him. *See Stewart Title*, 822 S.W.2d at 7–8 (noting that courts have applied the one satisfaction rule when defendants commit the same act as well as when defendants commit technically differing acts that result in a single injury).

In *Waite Hill*, the supreme court held that the plaintiff was required to elect between damages for repairs and restoration of property awarded under an insurance policy and under the DTPA, because the latter award was duplicative of the same elements awarded under the policy. 959 S.W.2d at 185. In so holding, the court noted that the plaintiff "may have suffered some tort losses, distinct from its claims on the policy[,]" indicating that recovery might have been available for such losses in addition to the contract damages, but that the plaintiff had offered no evidence as to any such additional recoverable losses. *Id.*

In *Dallas Farm Machinery Co. v. Reaves*, specifically regarding remedies for fraudulent inducement and breach of contract damages, the supreme court stated:

> [I]t is well settled that one who is induced by fraud to enter into a contract has his choice of remedies. He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing bought and receive back what he paid.

158 Tex. 1, 307 S.W.2d 233, 238–39 (1957); *see also Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 677 (Tex.2000) (recognizing quote from *Reaves* as correct statement of long-standing general proposition of law).

In *Hendon v. Glover*, the Beaumont court of appeals applied the holdings in the foregoing cases to hold that plaintiffs were required to elect between breach of contract damages and fraud damages. The court stated:

> It is well settled that a party aggrieved by a fraudulent transaction has alternate remedies and may either rescind, or affirm the transaction and recover his damages. But he cannot do both; he cannot retain all the benefits of the transaction and escape all of the obligations.

761 S.W.2d 120, 122 (Tex.App.-Beaumont 1988, writ denied) (quoting from *Talley v. Nalley*, 277 S.W.2d 739, 740 (Tex.Civ.App.-Waco 1955, writ ref'd n.r.e.)). The court reasoned that to allow recovery for both would constitute a double recovery, stating:

> While the language of those cases does not exactly cover our situation, it does proclaim that an aggrieved party has but one remedy, *if that remedy makes him whole.*

*Id.* (emphasis added).

In *Swink v. Alesi*, under facts similar to this case, the buyer of a business sued for breach of contract and for fraud based on misrepresentations, among others, that he would clear $800 per month from the business. 999 S.W.2d 107, 111 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The court of appeals held that, absent evidence of distinct damages suffered from the fraudulent misrepresentation, the buyer was required to elect between the damages awarded for fraud and those awarded for breach of contract where he had argued to the jury to award the same damages for both. *Id.*

Based on the foregoing cases, an election will normally be required between contract damages and fraud damages to prevent a double recovery. The language

of these opinions, however, leaves open the possibility, upon which Parlier relies, that recovery for both may be permitted if the damages awarded under each theory are necessary to make the plaintiff whole. Parlier argues that the separate and distinct elements of damages awarded under each theory here should be recoverable without an election because both are necessary to make him whole. We disagree.

Parlier relies upon *Medical Air Services, Inc. v. Kebert*, involving a suit by a sales representative for sales commissions resulting from sales of an insurance product, in which the court allowed recovery of both contract and fraud damages. 26 S.W.3d 663, 667–68 (Tex.App.-Corpus Christi 2000, pet. denied). The court held that no double recovery resulted in that case because the fraud damages constituted losses of additional commissions beyond the loss of renewal commissions awarded by the jury for breach of contract. *Id.*

*Kebert* does not apply to this case. Beyond the fraud damages previously awarded, the damages found for breach of contract in this case are not the type of additional damages involved in *Kebert*. Here, the damages found for breach of contract and fraud are based upon *alternative* remedies. Even though the amounts and elements found under each theory of recovery appear different, awarding damages for either theory makes Parlier whole, and awarding both would constitute two recoveries for the same injury, i.e., a prohibited double recovery.

■■■ The two measures of damages at issue here are "benefit-of-the-bargain" and "out-of-pocket." On the one hand, benefit-of-the-bargain is a measure of damages whereby a party may recover the difference between the value as represented and the value as received. *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d

127, 128 (Tex.1988); *Herzing v. Metropolitan Life Ins. Co.*, 907 S.W.2d 574, 585 (Tex.App.-Corpus Christi 1995, writ denied). On the other hand, under the out-of-pocket measure of damages, a party recovers "the difference between the value given and the value received." *Herzing*, 907 S.W.2d at 585. Impermissible double recovery occurs, in this context, if the injured party receives more than one remedy when recovery of only one remedy is necessary to make him whole. *Fortune Prod.*, 52 S.W.3d at 677.

■■■ The elements that the jury was instructed to consider in awarding breach of contract damages to Parlier consisted of the benefits promised to Parlier by Foley, and that Foley "failed" to pay. Those damages constitute benefit-of-the-bargain damages, for recovery of what an individual might reasonably expect to receive based upon the representations of another. *Hart v. Moore*, 952 S.W.2d 90, 97 (Tex.App.-Amarillo 1997, pet. denied). Benefit-of-the bargain damages are similar to expectancy damages for breach of contract, awarded for the reasonably expected value of a contract. *Id.* The jury was instructed to consider benefits that Foley failed to pay and that Parlier was entitled to recover, i.e., the 49% of profits, and reimbursement for expenses in performing the contract promised by Foley. Evidence established that Foley promised and failed to pay both elements to Parlier.

■■■ In contrast, the elements that the jury was instructed to consider in determining fraud damages consisted of out-of-pocket damages, i.e., Parlier's expenditures in moving to Texas, his investment of $12,000 and his loss of income. Those elements constitute "reliance" damages, which are to reimburse the plaintiff for expenditures made toward execution of the contract, in order to restore the status quo

before the contract, and are allowed as an alternative remedy for fraudulent inducement. *Id.*

Based upon Parlier's election, the judgment awards him his benefit-of-the-bargain damages, consisting of profits and other benefits represented and promised by Foley. In claiming he should not have been put to an election of remedies, Parlier seeks an additional award of his out-of-pocket damages for a return of his investment and expenses incurred in entering into the contract. He cannot have both. As pointed out in *Hendon,* Parlier cannot both "retain all the benefits of the transaction and escape all of the obligations." 761 S.W.2d at 122. This is equivalent to a double recovery for alternative measures of damages and is not permitted. *Hart,* 952 S.W.2d at 97 (citing *Birchfield* 747 S.W.2d at 367). In summary, an award of damages for both out-of-pocket and benefit-of-the bargain damages, in this instance, would commit an impermissible double recovery. *Id.*

Next, Parlier argues that he should be entitled to recover both his contract and fraud damages under the reasoning in *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41(Tex.1998). The supreme court held in that case that, if a plaintiff presents legally sufficient evidence on each element of a fraudulent inducement claim, any damages sound in tort even if the damages constitute economic loss resulting from breach of the contract. *Formosa Plastics,* 960 S.W.2d at 46. We disagree that *Formosa Plastics* applies here.

*Formosa Plastics* dealt with whether a claim of fraudulent inducement is viable when the damages consist of economic loss related only to performance of the contract. *Id.* The supreme court had previously held in *Southwestern Bell Telephone Co. v. DeLanney,* a suit for negligence seeking lost profits for failure to perform a contract, that when the only loss is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract. 809 S.W.2d 493, 494 (Tex.1991). The court extended the *DeLanney* rationale in *Crawford v. Ace Sign, Inc.,* to hold that a mere failure to fulfill a contractual obligation is a breach of contract, not a misrepresentation actionable under the DTPA. 917 S.W.2d 12, 13–14 (Tex.1996).

In *Formosa Plastics,* the court resolved a split which developed in the intermediate appellate courts regarding whether *De-Lanney* and *Ace Sign* also precluded a fraudulent inducement claim absent an injury independent from economic losses recoverable for breach of contract. The court refused to extend *DeLanney* to preclude such a recovery of tort damages when the plaintiff only suffers an economic loss recoverable as a breach of contract claim. *Formosa Plastics,* 960 S.W.2d at 47; *see Yzaguirre v. KCS Resources, Inc.,* 47 S.W.3d 532, 542 (Tex.App.-Dallas 2000), *aff'd,* 53 S.W.3d 368 (Tex.2001) (describing *Formosa Plastics* as "carv[ing] out a limited exception to [*DeLanney* ], holding that a party may maintain an action for fraudulent inducement of a contract even where the only damages are contract damages").

 *Formosa Plastics* does not aid Parlier because it did not hold that *both* tort and contract damages are recoverable, nor did it involve whether a plaintiff must elect between contract and fraud damages.[2] In fact, the opinion in *Formosa*

**2.** In *Haase v. Glazner,* the supreme court has recently made clear that fraudulent inducement is a particular species of fraud that arises only in the context of a contract and that requires the existence of a contract as part of its proof. 62 S.W.3d 795, 799 (Tex. 2001). Only in that context, i.e., when there is a contract enforceable under the statute of

*Plastics* reflects that the plaintiff there elected to recover only the damages awarded by the jury for fraudulent inducement and waived those awarded for breach of contract. 960 S.W.2d at 44. Only those damages awarded for fraudulent inducement were at issue on appeal. *Id.* We hold that the trial court correctly required Parlier to elect his remedy. We overrule Parlier's first issue asserting a right to recover his contract damages in addition to his fraud damages.

## 2. Remittitur for Actual Damages

▄▄▄▄ Parlier next contends the trial court erred in ordering a $750 remittitur. We review a trial court's order of remittitur under a factual sufficiency standard. *Gray,* 41 S.W.3d at 332 (citing *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 847 (Tex. 1990)). We will uphold a trial court's remittitur only when the evidence is factually insufficient to support the jury's verdict. *Larson v. Cactus Util. Co.,* 730 S.W.2d 640, 641 (Tex.1987). The evidence is factually insufficient if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In making this determination, we are required to examine all the evidence in this case. *Ellis,* 971 S.W.2d at 406–07.

▄▄▄▄ In sustaining a factual insufficiency challenge, our opinion must detail the evidence relevant to the point in consideration, and clearly state why the finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). Further, our opinion must state in what regard the contrary evidence greatly outweighs the evidence in support of the finding. *Id.; Lofton v. Tex. Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986).

▄▄▄▄ Prior to addressing the merits, Foley raises the preliminary concern that Parlier waived his remittitur issue by failing to cite to the relevant parts of the record in his brief. *See* TEX.R.APP. P. 38.1(h). A mere list of record referrals, or a complete lack of record references, will not suffice. John Hill Cayce, Jr., Anne Gardner, Felicia Harris Kyle, *Civil Appeals in Texas: Practicing Under the New Rules of Appellate Procedure,* 49 BAYLOR L.REV. 867, 956–57 (1997). However, because Parlier's brief provides specific record references, we do not agree with Foley that Parlier inadequately briefed this issue.

During the hearing on the motion for judgment n.o.v., Foley's counsel addressed jury question number six. By this question, the jury was asked to assess actual damages resulting from fraud. In making that determination, the jury could consider only (1) Parlier's initial payment of $12,000; (2) Parlier's reasonable and necessary expenses in traveling from California to Texas; and (3) Parlier's loss of income from time spent pursuing the contract. After reviewing these facts, the jury awarded $12,750 for actual damages. Foley's counsel argued that "[t]here were no amounts that were shown by the plaintiff that add up to that amount." Consequently, the trial judge ordered a remittitur of $750 of the actual damages.

After careful examination of the record, we conclude that the evidence supports the

---

frauds, is a plaintiff entitled to benefit-of-the-bargain damages as a measure of recovery for fraud. *Id.* (stating that *Formosa Plastics* should not be construed to say that fraud and fraudulent inducement are interchangeable with respect to the measure of damages recoverable). In contrast, out-of-pocket loss may still be recoverable as damages for fraud in connection with an unenforceable contract, as long as those damages are not part of the benefit promised as a part of the contract. *Id.*

jury's initial damages finding. Parlier testified that the time and money he spent in both coming to Texas and working on one of the jobs was about $20,000. Parlier provided several receipts as proof of expenses he incurred in coming to Texas. Specifically, Parlier spent $2062.65 customizing a pick-up truck for the work he would be required to do in Texas. Parlier further testified he had to sell his extra vehicle in California so that he could live in Texas, resulting in a $48 advertising expense. Other expenses related to the Texas trip included $8.73 for a stretch cover to cover his items while moving; $3.19 for a map; $139.38 for a business telephone; and $6.95 for tools. The record further reflects that he also purchased a pickup truck for more than $20,000 because Foley told him his van was unsuitable.

Having reviewed all the evidence, we cannot say that the jury's award of $12,750 in actual damages was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool,* 715 S.W.2d at 635. The jury could reasonably have found that Parlier not only suffered the loss of his initial $12,000, but he suffered a great deal more. We hold that the trial court erred in ordering a remittitur of $750 from Parlier's actual damages award. We sustain Parlier's second issue.

## IV. CONCLUSION

Having overruled all three of Foley's issues, and having overruled in part and sustained in part Parlier's issues, we reinstate the jury's verdict as to the full amount of the actual damages awarded to Parlier and reform the trial court's judgment to award $12,750 in actual damages for fraud. We affirm the remainder of the trial court's judgment as reformed.