# NO. 12-08-00442-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BARBARA ANN SMITH SANDERSON F/K/A BARBARA ANN SMITH, APPELLANT* | § | *APPEAL FROM THE 123RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *JOHN R. SMITH, APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Barbara Ann Smith Sanderson, appeals from a judgment in favor of Appellee, John R. Smith. On appeal, Barbara contends that the trial court erred by determining that John is in compliance with the divorce decree, and that the election of remedies and theories of recovery in Barbara's motion are insufficient to support a recovery. We reverse and remand.

## BACKGROUND

John and Barbara entered into an agreed final decree of divorce on February 16, 1996 after thirty-three years of marriage. In the divorce decree, the parties contractually agreed to alimony payments for ten years. The relevant alimony section of the divorce decree is as follows:

### ALIMONY

Contractual Obligations

The alimony obligations undertaken by Paying Party in this Decree are contractual in nature, and [are] not . . . obligation[s] imposed by order or decree of the Court.

Terms, Conditions, and Contingencies

The terms of these contractual alimony provisions as set forth below will further be stipulated by the parties in the Agreement Incident to Divorce signed of even date herewith.

Insurance Amount. JOHN R. SMITH agrees to pay for the benefit of BARBARA ANN SMITH the sum of $221.95 per month for health and dental insurance for a period of 12 months as ordered hereinabove, and shall pay said insurance premiums directly to the current provider of her medical and dental insurance for medical and dental

coverage for BARBARA ANN SMITH. Said sum shall be paid as follows: for the period beginning on February 1, 1996, with a like payment being due and payable on the 1st of each month thereafter and continuing through and including January 1, 1997. JOHN R. SMITH shall pay the monthly sum of $221.95 to the health insurance agency presently providing health and dental insurance coverage for BARBARA ANN SMITH through JOHN R. SMITH'[s] health insurance plan with the State of Texas.

> Mortgage Amount. JOHN R. SMITH agrees to pay, beginning on February 1, 1996, with a like payment being due and payable on the 1st of each month thereafter and continuing until and including December 22, 2006, the mortgage balance and any past-due monthly installment on the residence located at 405 Pine Terrace, Center, Shelby County, Texas, hereinabove awarded to Counter-Respondent in the approximate amount of $62,674.34 as and for alimony, directly to the mortgagee, CITIZEN'S FEDERAL BANK, P.O. Box 5248, Ft. Lauderdale, Florida 33310-5248, in monthly installments of $674.26 until such time that the sum is paid in full, the home is sold, or upon the expiration of ten (10) years from January 22, 1996, whichever occurs first.

> Term for Mortgage

> The payments will be for a term of ten (10) years and will continue until January 22, 2006, or until the mortgage is paid in full.

> In the event BARBARA A. SMITH elects to sell the residence prior to expiration of the full ten-year term, JOHN R. SMITH is obligated to pay the remaining balance in monthly installments of $674.26 to BARBARA ANN SMITH under the terms of the mortgage during said 10-year alimony obligation, and shall pay any balance then remaining on the mortgage, which payoff amount is $62,674.34 as of January 15, 1996, after expiration of said 10-year term directly to BARBARA ANN SMITH within 30 days from the date of the last alimony payment within the ten-year period.

John made payments according to the alimony agreement until November 30, 2000. On that date, Barbara sold the house located at 405 Pine Terrace, Center, Shelby County, Texas. The balance of the loan owing to Citizen's Federal Bank was paid in full. On July 12, 2001, Barbara filed a motion for enforcement of the judgment alleging, in part, that John failed to pay her the monthly payment of $674.26 according to the parties' agreement and divorce decree after payment and discharge of the promissory note. On March 11, 2003, the trial court signed a judgment that, in part, ordered a severance of Barbara's claims. John appealed this judgment. On October 29, 2004, we reversed the trial court's judgment and remanded the case to the trial court for further proceedings. *See Smith v. Sanderson*, No. 12-03-00137-CV, 2004 WL 2422257, at *3 (Tex. App.–Tyler Oct. 29, 2004, no pet.) (mem. op.).

On November 15, 2005, Barbara filed a motion for enforcement of the judgment, alleging that John failed to pay her the balance of the contractual alimony obligation. More specifically, she alleged that John breached the contract. John generally denied Barbara's allegations and alleged the affirmative defense of *res judicata*. On December

20, 2007, the trial court held a hearing on these live pleadings. On August 8, 2008, the trial court denied all relief sought by both parties. Later, the trial court entered findings of fact and conclusions of law.  This appeal followed.

**ELECTION OF REMEDIES**

In her second issue, Barbara challenges the trial court's conclusions of law, contending that the trial court erred by determining that the election of remedies and theories of recovery in her motion are insufficient to support a recovery. She argues that John did not plead a defense under the doctrine of election of remedies, and that the statutory and contractual theories of recovery she pleaded are not inconsistent with one another. We agree.

We review a trial court's conclusions of law de novo. *Quick v. Plastic Solutions of Texas, Inc.*, 270 S.W.3d 173, 181 (Tex. App.–El Paso 2008, no pet.).  Erroneous conclusions of law are not binding on the appellate court.  *Id.*  Election of remedies is an affirmative defense that must be pleaded.  *France v. American Indem. Co.*, 648 S.W.2d 283, 285 (Tex. 1983).  When an affirmative defense, such as election of remedies, is not pleaded, it is waived.  *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 223 (Tex.1992); *Compass Bank v. MFP Fin. Svcs., Inc.*, 152 S.W.3d 844, 851 (Tex. App.—Dallas 2005, pet. denied).

In its conclusion of law number two, the trial court stated as follows:

> The election of remedies, and theories of recovery, promulgated by Petitioner in her *Motion to Enforce Judgment* are insufficient to entitle any recovery by Ms. Sanderson from John R. Smith under the facts of this case.  John R. Smith's argument in regard to election of remedies is sound.

In John's answer to Barbara's motion filed on November 15, 2005, he did not specifically plead election of remedies as an affirmative defense.  Further, we can find nothing in the record showing that John ever affirmatively pleaded election of remedies. Because John did not plead election of remedies, he has waived it. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 223; *Compass Bank*, 152 S.W.3d at 851.

Even if John had not waived election of remedies as an affirmative defense, Barbara would still prevail. An election of remedies issue occurs when a plaintiff who has two inconsistent remedies must elect between them and pursue only one.  *See Foley v. Parlier*, 68 S.W.3d 870, 882 (Tex. App.–Fort Worth 2002, no pet.).  Remedies are

3

inconsistent when one of the remedies results from affirming the transaction and the other results from disaffirming the transaction. *Id.* A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a "double recovery." *Id.* Here, Barbara pleaded only one theory of recovery, breach of contract. Nowhere in her motion does she plead inconsistent remedies. Because Barbara did not plead inconsistent remedies, the trial court erred in determining that Barbara's election of remedies and theories of recovery were insufficient to support a recovery. *See id*.

Barbara's second issue is sustained.

## CONSTRUCTION OF CONTRACT

In her first issue, Barbara challenges the trial court's conclusions of law, arguing that the trial court erred by determining that John is in compliance with the terms of the divorce decree. She contends that the contractual alimony obligation required John to pay the mortgage in monthly installments to her for the ten year period even if the residence was sold. We agree.

"An agreed divorce decree is a contract subject to the usual rules of contract interpretation." *Chapman v. Abbot*, 251 S.W.3d 612, 616 (Tex. App.–Houston [1st Dist.] 2007, no pet.); *see also McCollough v. McCollough*, 212 S.W.3d 638, 642 (Tex. App.–Austin 2006, no pet.). (stating that alimony agreements and other marital property agreements, even when incorporated into divorce decrees, are enforceable as contracts and governed by contract law). In construing an agreement, we first determine whether it is possible to enforce the contract as written, without resort to parol evidence. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003). Deciding whether a contract is ambiguous is a question of law for the court. *Id*. In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.* On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of

4

construction, the contract is ambiguous, creating a fact issue on the parties' intent. *Webster*, 128 S.W.3d at 229.

In its conclusion of law number one, the trial court stated as follows:

> The *Agreed Final Decree of Divorce,* signed on February 16, 1996, required John R. Smith to pay the balance on the "note" on the house at 405 Pine Terrace, Center, Shelby County, Texas, up to the date of the sale of the property on November 30, 2000. The evidence presented in all phases of this case show[s], by clear and convincing evidence, that Mr. Smith made the monthly payments in compliance with said *Agreed Final Decree of Divorce* until the house was sold and has fully complied with all obligations therein. Therefore, any monies sought by virtue of the *Motion to Enforcement* against John R. Smith are without merit and denied.

Neither party suggests that the contractual alimony obligation is ambiguous, nor do we find it to be so. Therefore, we construe the contract as a matter of law. *See Coker*, 650 S.W.2d at 393. In order to construe the contractual alimony obligation, we must examine the entire contract. *See id.* The agreement states that the balance of the mortgage, or $62,674.34, is awarded to Barbara "as and for alimony." The balance of the mortgage at the time of the agreement was $62,674.34. Under the terms of the agreement, the contractual alimony obligation and the mortgage balance were the same amount, being $62,674.34.

Next, we must ascertain how John was to meet his contractual alimony obligation. He agreed to pay the mortgage balance in monthly installments of $674.26 directly to the mortgagee, Citizen's Federal Bank, beginning on February 1, 1996. But the question here is whether John's contractual alimony obligation was released if Barbara decided to sell the house and the mortgage was paid in full before the ten year contractual alimony period ended. The agreement specifically states that, in the event Barbara elected to sell the residence prior to the expiration of the full ten year term, John was "obligated to pay the remaining balance" to Barbara in the same monthly installments of $674.26 under the terms of the mortgage during the ten year alimony obligation. In other words, only the payee changed if Barbara sold the house and the note to Citizen's Federal Bank was extinguished. John's "ten year alimony obligation" continued until he paid the contractual alimony obligation, being the same amount as the mortgage balance, to Barbara. The agreement is clear and unambiguous that John had a ten year alimony obligation whether Barbara sold the residence or not.

John argues that we must construe the agreement in such a way that Barbara would be penalized if she sold the residence before the end of the ten year alimony

obligation. Nothing in the agreement indicates that this was the intent of the parties. The agreement, when considered as a whole, and giving effect to all provisions, states that if the residence is sold and the mortgage is paid, John's contractual alimony obligation is to be paid directly to Barbara rather than to the mortgage company for the full term of the alimony obligation. *See id.* Reading it this way, all provisions relating to the contractual alimony obligation have meaning. *See id.*

John acknowledges that he did not make any payments to Barbara after she sold the residence. However, we have concluded that the contractual alimony obligation required John to pay Barbara the remaining balance of the mortgage note in monthly installments for the ten year period even if she sold the house. Because he did not do so, the trial court erred by determining that John is in compliance with the terms of the divorce decree. Accordingly, Barbara's first issue is sustained.

## DISPOSITION

Having sustained both of Barbara's issues, the August 8, 2008 judgment of the trial court is ***reversed*** and ***remanded*** to the trial court to determine the remaining balance of the contractual alimony obligation that John owes to Barbara.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 14, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)