*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-11-00086-CV

William J. **GEBHARD** III,
Appellant

v.

**LAXMI–VISHNU ENTERPRISES, INC.** and Pravin Ghael,
Appellees

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-08674
Honorable Michael Peden, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  January 18, 2012

AFFIRMED

William J. Gebhard III appeals a judgment against him based on claims of breach of

fiduciary duty, fraud, and statutory fraud arising out of a real estate transaction. On appeal,

Gebhard argues the evidence was legally and factually insufficient to support the judgment, and

the trial court erred in submitting certain instructions to the jury. We affirm.

## BACKGROUND

In June 2006, Gebhard, a real estate agent, entered into a listing agreement to market and

sell a hotel owned by appellee Laxmi-Vishnu Enterprises, Inc. Laxmi-Vishu's president and sole

shareholder was appellee Pravin Ghael. Ghael instructed Gebhard about the type of offer he was willing to accept. Although Ghael was willing to provide seller financing, he required a minimum purchase price of $4.5 million and a minimum down payment of $1.25 million. There were two reasons for the $1.25 million down payment requirement: (1) Ghael needed the proceeds of the down payment to pay off two outstanding notes on the property, and (2) Ghael wanted to ensure that it would not be easy for a buyer to default and walk away from its obligation.

Gebhard brought Ghael an offer from Pacific Hotel Group, LLC. Ghael rejected the offer because it did not meet his $1.25 million down payment requirement. In October 2006, Gebhard brought Ghael another offer from Pacific that met both of Ghael's requirements. This offer was accepted by Ghael. Ghael and Pacific signed a sales contract calling for a purchase price of $4.75 million and a down payment of approximately $1.25 million[1] to be paid at closing. Because it was likely that Ghael would be out of the country when the transaction closed, Gebhard suggested Ghael give someone power of attorney to act on his behalf. Following this advice, Ghael appointed one of his friends, Paresh Raja, to serve as his attorney-in-fact.

Ghael left the country in November 2006, before the transaction closed. Ghael planned to travel to India and Burma for several months, and was not due back until late January 2007. During this time period, Ghael and Gebhard kept in contact by email.

While Ghael was out of the country, Gebhard prepared an amended sales contract, which changed the terms of the transaction. Among other things, the amended sales contract significantly reduced the amount of money Pacific would be required to pay at closing. The amended contract included "wraparound" provisions, which allowed Pacific to delay paying most of its down payment until several months after closing. Specifically, the wraparound

---

[1]The actual amount was slightly higher.

provisions required Pacific to make payments on the two notes on the property for several months, then make two large payments to Ghael. In turn, Ghael would use these funds to pay off the notes. Both of the notes were to be paid off in full by May 2007. In addition to the wraparound provisions, Pacific was required to make monthly mortgage payments to Ghael.

The amended contract was signed by Pacific. Thereafter, Gebhard presented Raja with the amended sales contract. Gebhard told Raja he had spoken to Ghael about the changes to the terms of the transaction, and Ghael had consented to the changes. Based on these representations, Raja signed the amended sales contract. On January 24, 2007, just days before Ghael returned home, the transaction closed with Raja signing the closing documents on Ghael's behalf. Gebhard's commission on the sale was about $190,000.00.

Upon returning home, Ghael was surprised to learn of the changes made to the transaction, and advised Gebhard that he was not satisfied with terms in the amended sales contract. Ghael was concerned about Pacific defaulting on the contract because it had paid such a small amount at closing. Ghael asked Gebhard to place his sales commission in an escrow fund until after Pacific paid the down payment in full. Gebhard complied with this request. Gebhard also told Ghael that Pacific would obtain a performance bond to protect Ghael from any losses in the event of a default, but this performance bond was never obtained.

Thereafter, Pacific defaulted on its obligations. Pacific failed to make the large payments that Ghael was planning to use to pay off the notes on the property. By September 2007, Pacific had stopped making its monthly mortgage payments. Ghael eventually instituted foreclosure proceedings, and recovered the property.

Laxmi-Vishnu and Ghael sued Gebhard for breach of fiduciary duty, fraud, and statutory fraud based on Gebhard's actions during the sales transaction. In their petition, Laxmi-Vishnu

and Ghael alleged, among other things, that Gebhard falsely represented to Raja that Ghael had approved the terms of the amended sales contract.

The case was tried to a jury, which found in favor of Laxmi-Vishnu and Ghael on all of the liability issues and awarded actual and exemplary damages. In accordance with the jury's verdict, the trial court rendered judgment against Gebhard in the amount of $139,023.84 for actual damages, and in the amount of $69,285.08 for exemplary damages. Gebhard appealed.[2]

## SUFFICIENCY OF THE EVIDENCE

On appeal, Gebhard challenges the legal and factual sufficiency of the evidence to support the judgment as to liability and exemplary damages. As to liability, Gebhard argues there was insufficient evidence that he engaged in any of the devious activities attributed to him, and therefore, Laxmi-Vishnu failed to carry its burden of proof. As to exemplary damages, Gebhard argues the meager evidence of fraud presented by Laxmi-Vishnu wholly failed to meet the clear and convincing standard of proof as required.

### *The Trial Evidence*

At trial, the primary witnesses to testify were Raja, Gebhard, and Ghael. Raja testified Gebhard met with him about the amended sales contract. At this meeting, Gebhard told him he had talked to Ghael on the phone, and Ghael had approved the terms in the amended contract. Raja further testified he signed the amended sales contract based on Gebhard's representations that Ghael had approved its terms.

Consistent with Raja's testimony, Gebhard testified he told Raja that Ghael had approved the terms of the amended contract. But Gebhard insisted he had talked to Ghael on the phone, and Ghael had in fact approved the terms of the amended contract. Gebhard acknowledged, however, that he had no phone records to corroborate his testimony that he had spoken to Ghael

---

[2]Capitol Area Realty, Inc., was also a defendant in the suit, but is not a party to this appeal.

by phone. Gebhard also admitted this phone conversation with Ghael was never confirmed in any writing.

Ghael testified he and Gebhard never had a phone conversation about changing the terms of the initial sales contract, or about the terms in the amended sales contract. Ghael stated he never consented to changing the terms of the initial sales contract. Additionally, the closing statement indicated Pacific paid $150,000.00 cash at closing; however, Ghael later learned that most of the $150,000.00 was loaned to Pacific by Gebhard's broker, Capitol Area Realty, Inc., which made the loan from the proceeds of the sales commission on this transaction.

Various documents were also admitted into evidence at trial. These documents included the initial sales contract, and the amended sales contract. Numerous emails between Ghael and Gebhard were also admitted into evidence. These emails show Ghael and Gebhard remained in frequent contact and discussed various details concerning the transaction, even while Ghael was out of the country.

Finally, the president of Capitol Area Realty, Inc., Jimmy Dean Johnson III, testified. Gebhard was affiliated with Capitol Area Realty. Johnson testified that real estate agents do not "vet" buyers, but they are obligated to follow the instructions of their clients. He further explained that real estate agents owe a fiduciary duty to their clients. As to the present case, Johnson stated that if Gebhard changed the terms of the contract without Ghael's knowledge or consent when Ghael was asking to be kept informed, then Gebhard breached his fiduciary duty to Ghael. Johnson also stated that loaning sales commission funds to Pacific was ethical if Ghael was made aware of this arrangement in advance, but was unethical if Ghael was not made aware of this arrangement in advance.

*Standards of Review*

When reviewing a legal sufficiency or "no evidence" challenge, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id*. Appellate courts will sustain a legal sufficiency or "no evidence" challenge when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

When reviewing a factual sufficiency challenge, we consider all the evidence supporting and contradicting the verdict. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

*Liability*

To establish a breach of fiduciary duty cause of action, a plaintiff must prove (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or a benefit to the defendant as a result of the defendant's breach. *PAS, Inc. v. Engel*, 350 S.W.3d 602, 610 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.).

To establish a common law fraud cause of action, a plaintiff must prove (1) a material representation was made, (2) which was false, (3) which was either known to be false when made or which was recklessly made as a positive assertion without knowledge of its truth, (4) which the speaker made with intent that it be acted upon, and (5) the other party took action in reliance upon the misrepresentation, and (6) thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding); *Dynegy, Inc. v. Yates*, 345 S.W.3d 516, 529 (Tex. App.—San Antonio 2011, pet. filed). The elements of statutory fraud are nearly identical to the elements of common law fraud, except that statutory fraud does not require proof of knowledge or recklessness as a prerequisite for recovery of actual damages. TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009); *Lindley*, 349 S.W.3d at 128.

On appeal, Gebhard acknowledges the trial revolved around whether the jury believed his testimony that he advised Ghael in a phone conversation that a wraparound arrangement was necessary to make the transaction work. As the reviewing court, we must assume the jury decided credibility questions in favor of the verdict if reasonable human beings could do so. *Wilson*, 168 S.W.3d at 819. Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *Id*. Jurors may choose to believe one witness and disbelieve another. *Id*. Thus, the jury was free to disbelieve Gebhard's testimony that Ghael was advised of the changes in the amended sales contract, and was free to believe Ghael's testimony that he was not advised of the changes in the amended sales contract.

Gebhard also challenges Raja's credibility. Again, it was within the jury's province to believe or disbelieve Raja's testimony.

Gebhard asserts the emails between he and Ghael show that when Ghael left the country the transaction was not finalized and would still require "significant tweaking." Gebhard further

asserts the emails demonstrate that Ghael should have anticipated that aspects of the transaction would change over the course of months. Although a jury could have drawn these inferences from the emails, it was not required to do so. *See id.* at 821 ("Even if evidence is undisputed, it is the province of the jury to draw from it whatever inferences they wish, so long as more than one is possible and the jury must not simply guess.").

The jury could have drawn other inferences from the emails as well. With a few exceptions, the emails show that while Ghael was out of the country, Ghael and Gebhard communicated about two or three times per week. The emails also show Ghael repeatedly inquired about various aspects of the transaction. In one email, Ghael asked Gebhard to forward him a copy of the closing statement, either by email or by courier. There was some evidence that the closing statement would have revealed the changes in the amended contract. However, Gebhard never forwarded Ghael a copy of the closing statement as requested. In other emails, Gebhard provides Ghael information about the franchise approval, the transfer of hotel management, and the preparation of the closing documents. Despite the detailed nature of the emails, the changes in the amended contract were never mentioned, either directly or indirectly. Thus, the emails tend to support an inference that Ghael was not told about the changes in the amended contract prior to closing.

We conclude there was legally and factually sufficient evidence to establish that Gebhard breached his fiduciary duty to Ghael. The evidence showed Gebhard had a fiduciary relationship with Ghael. Gebhard was well aware of Ghael's requirement that the buyer make a $1.25 million down payment, and the reasons behind it. Ghael told Gebhard he wanted a $1.25 million down payment to pay off the two notes on the property and to minimize the risk that the buyer would default. Nevertheless, when Ghael was out of the country, Gebhard had Raja sign an amended

contract that dramatically altered the terms of the transaction. The amended contract included terms, particularly the wraparound provisions, that conflicted with Ghael's instructions. Thus, the evidence showed Gebhard breached his fiduciary duty to Ghael. Finally, the evidence showed Ghael was injured by the breach of fiduciary duty. Ghael testified he suffered financial losses from the sale, including the sales commission paid to Gebhard and other fees related to the closing. Ghael further testified he suffered financial losses from the default, including foreclosure fees.

We further conclude there was legally and factually sufficient evidence to establish that Gebhard engaged in fraud. The evidence showed Gebhard represented to Raja that Ghael had consented to the terms of the amended contract. There was some evidence that Gebhard's representation to Raja was false, that Gebhard knew the representation was false, that Gebhard made the representation with the intent that Raja would act on it, that Raja in fact acted on it, and that as a result Ghael suffered injuries.

We conclude the evidence at trial would enable reasonable and fair-minded people to reach the verdict that the jury reached in this case. We further conclude the evidence was not so weak or the verdict was not so against the great weight and preponderance of the evidence that it was clearly wrong and unjust.

### *Exemplary Damages*

The Civil Practice and Remedies Code requires a plaintiff seeking recovery of exemplary damages resulting from fraud to establish the elements of fraud by clear and convincing evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1) (West Supp. 2011). This higher standard of proof does not change the appellate standard of review; rather, it merely changes the weight of the evidence to support the verdict. *Foley v. Parlier*, 68 S.W.3d 870, 880 (Tex. App.—

Fort Worth 2002, no pet.). For exemplary damages purposes, clear and convincing evidence is defined as that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Gore v. Scotland Golf, Inc.*, 136 S.W.3d 26, 34 (Tex. App.—San Antonio 2003, pet. denied).

Gebhard contends the evidence of fraud was meager in this case and, therefore, does not support the award of exemplary damages. We disagree with Gebhard's assessment of the evidence. The evidence showed Gebhard represented to Raja that he had obtained Ghael's consent to change a key term of the transaction. There was no dispute that Gebhard made these representations to Raja; the only dispute was whether Gebhard in fact obtained consent from Ghael. The evidence also showed Raja acted on Gebhard's representations, and this was detrimental to Ghael. There was also evidence that Gebhard represented to Ghael in his emails that the transaction was going according to plan when it was not, and that Gebhard failed to advise Ghael of some important developments in the transaction. We conclude the evidence in this case could have produced in the minds of the jurors a firm belief or conviction that Gebhard engaged in fraud.

## JURY INSTRUCTIONS

Next, Gebhard complains about the jury instructions as to breach of fiduciary duty. The record shows that when the trial court asked Gebhard if he had any objections to the jury charge, he affirmatively stated that he had none. The trial court then read the charge to the jury.

In order to preserve error on appeal, a party must timely object to the jury charge, plainly make the trial court aware of the nature of the complaint, and obtain a ruling. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007); *Faust v. BNSF Railway Co.*, 337 S.W.3d 325, 330 (Tex. App.—Fort Worth 2011, pet. filed). As to jury instructions, failure to object before the

charge is read to the jury waives the complaint. *Mo. Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 873 (Tex. 1973); TEX. R. CIV. P. 272, 274.

Because Gebhard did not raise his complaints about the jury instructions in the trial court, they are not preserved for appellate review.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice