**MEDICAL AIR SERVICES ASSOCIATION and Frank Halley, Appellants,**

v.

**Carl L. KEBERT, Jr., Appellee.**

**No. 13–97–782–CV.**

Court of Appeals of Texas, Corpus Christi.

July 27, 2000.

Rehearing Overruled Sept. 14, 2000.

---

1. TEX.CODE CRIM. PROC. ANN. art. 42.037(f)(1)    (Vernon Supp.2000).

Earl Rutledge, Jr., Hurst, Russell H. Mcmains, Law Offices of Russell Mcmains, Corpus Christi, for Medical Air Services Assn. and Frank Halley.

James A. Herrmann, Harlingen, Carter C. White, Yanta Flores & Korth, Austin, for Carl L. Kebert, Jr.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## O P I N I O N

Opinion by Justice HINOJOSA.

Appellee, Carl L. Kebert, Jr., sued appellants, Medical Air Services Association (MASA) and Frank Halley, for breach of contract and fraud. The jury found MASA had breached the contract and that Halley had defrauded Kebert. The trial court signed a judgment against MASA for $1,413,825 in actual damages, attorney's fees, and pre-judgment interest. The judgment also included actual damages and pre-judgment interest against Halley in the amount of $135,382.50. Appellants appeal from the trial court's judgment. Appellants complain: (1) that Kebert waived his right to recover for monies from a contract assigned to him; (2) of legal and factual insufficiency of the evidence to support findings on various issues; (3) of double recovery; and (4) of improper assessment of pre-judgment interest. We reform the judgment and, as reformed, affirm.

## A. BACKGROUND

MASA provides various transportation services to members in case of medical emergencies. Membership is established by completing an application and paying a one-year membership fee.[1] Although MASA is not an insurance program, it functions in a similar manner. Memberships are marketed in a variety of ways including, as in this case, being sold by commissioned, independent contractors. Halley owns MASA.

Halley and Kebert are long-time acquaintances. As Halley was looking for salesmen, Kebert decided to stop selling insurance and work for MASA. Kebert, a Rio Grande Valley resident, believed MASA provided services that would be very appealing to "Winter Texans" who live in the Rio Grande Valley during the winter months each year. Until this point, MASA had only been offered as a group plan in the Valley. Halley agreed that Kebert could market MASA to individuals in the Valley. Kebert arranged with numerous mobile home parks in the Valley to set up breakfast meetings or ice cream socials to explain MASA's services.

Kebert signed his first contract with MASA in 1988, and it was good for the 1988–89 winter tourist season. According to the terms of this agreement, Kebert was to receive a fifty percent commission on every service contract he sold and a fifty percent renewal commission for every year the service contract was renewed for the remainder of his life. Service contracts for the initial year cost sixty dollars and could be renewed each subsequent year for the same amount. Thus, Kebert was to receive thirty dollars for each service contract renewal attributed to the 1988–89 season. All renewals were vested for the life of the salesman. During the first season, Kebert was the sole MASA agent in the Valley.

Kebert signed contracts with MASA for subsequent seasons up to and including the 1992–93 season. The terms of all contracts were similar except for changes in the cost of the memberships and the percentages of renewal commissions. During these subsequent seasons, Kebert had subagents working for him and was also contractually entitled to a percentage of their renewals. In the 1990–91 season, Kebert did not sell memberships because he was traveling nationwide for MASA. In October 1993, Halley notified Valley motor home parks that Kebert was no longer authorized to do MASA business in the parks. For a brief time, Kebert continued to sell charter life memberships.

Almost from the beginning, Kebert was paid erratically because MASA was allegedly struggling to become established. Throughout his tenure with MASA, Kebert continuously complained about not receiving all the renewal commissions to which he was entitled. He felt that the membership/renewal records he received from MASA were inaccurate. The last check Kebert received from MASA was dated March 3, 1994. After his termination, Kebert persisted in asking for the renewal commissions he felt MASA owed him. In June 1994, Kebert taped a telephone conversation in which Halley continued to tell Kebert he would receive "every nickel" he was owed, but Halley questioned the amount Kebert claimed was due him. During that conversation, Kebert told Halley he thought the situation was going to end up in court. Then in July 1994, Kebert taped a conversation with Tim Green, MASA's attorney. Green claimed he could not decipher Kebert's demands and told Kebert to settle for a lump sum payment or take MASA to court. Kebert sued and won. MASA and Halley now appeal.

## B. SUFFICIENCY OF THE EVIDENCE

When we review a legal sufficiency of the evidence point of error, we consider all

---

1. Other fee arrangements such as charter life memberships and a five-year plan are available. As the contractor is paid a one-time commission for these programs, they are not relevant to the case except to the extent some yearly memberships were converted to these plans.

the evidence in a light favorable to the party in whose favor the verdict was rendered, and every reasonable inference raised by the evidence is to be indulged in that party's favor. *Formosa Plastics Corp. USA v. Presidio Eng'r & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Id.; Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

When we review a factual sufficiency point of error, we consider, weigh, and examine all of the evidence which supports or undermines the jury's finding. *Plas-Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only when we find that the evidence, standing alone, is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

## C. Issues Presented

In the 1989–90 season, Kebert and his sub-agents worked the Valley. MASA sent another agent, Floyd Perry, with his sub-agents to the Valley that same year. Kebert did not realize, until later, that he was considered Perry's sub-agent. Perry's other sub-agents sent their completed applications to Perry, but Kebert sent his applications directly to the MASA home office. In the summer of 1990, Perry told Kebert he needed $15,000 to prevent the IRS from taking his house. Kebert agreed to loan Perry the money, and Perry insisted that Kebert accept, as collateral, an assignment of his renewals for the 1989–90 season. Perry did not repay the loan, and Kebert became the contractual owner of the Perry renewals. Kebert contends he was never paid for any of these renewals. Appellants argue that Perry was not entitled to the renewals and, therefore, neither was Kebert.

MASA included in the Perry renewals, memberships sold by four groups—Perry, Perry's sub-agents, Kebert, and Kebert's sub-agents. Regardless of whether Perry forfeited his renewals and a percentage of his subagent's renewals, all sub-agents, including Kebert, were contractually entitled to renewals on any memberships they personally sold. In addition, Kebert had a right to a percentage of any renewals owed to his sub-agents.

In their first issue, appellants contend Kebert waived any claim based on the alleged assignment of Perry's contractual right to renewal commissions because Kebert failed to submit any jury question on such a claim. By their second issue, appellants question whether the evidence is legally or factually sufficient to support damages based on the assigned right to Perry's renewal commissions.

■ By their third issue, appellants challenge the legal and factual sufficiency of the evidence to support a judgment against MASA for breach of contract damages. Appellants contend the evidence does not support the $1,125,000 damages award for breach of contract, unless the damages claimed for the assigned/Perry renewals are included.

Dr. Gilbert Cardenas, an economics professor at the University of Texas—Pan American, testified that with the assigned renewals, Kebert was owed $2,058,346. Of this amount, $1,350,446 was for the assigned/Perry renewals. Appellants do not challenge Dr. Cardenas's testimony that Kebert was owed $151,458 for 1988–89 renewals or $556,542 for renewals for 1991–93. Thus, the question is how much, if anything, is Kebert owed for the Perry renewals?

Dr. Cardenas based his calculations for the Perry renewals on a total of 3,933 memberships sold by the Perry group in 1989–90. Of this amount, Halley and his son, Randy Halley, testified Kebert and his sub-agents sold between 1,200 and 1,600 memberships. If we rely on the low

end of that range, 31% (1,200/3933) of the memberships sold in 1989–90 would be attributable to Kebert and his sub-agents. Thirty-one percent of $1,350,446 would be $418,638. When that number is added to the other amounts owed Kebert, we find the following:

| | |
|---|---|
| Amount due for 1988–89 | $ 151,458 |
| Amount due for 1989–90 | 418,638 |
| Amount due for 1991–93 | 556,542 |
| Total | $1,126,638 |

As this amount is obviously more than the $1,125,000 awarded by the jury, we hold there is legally and factually sufficient evidence to support the entire amount of damages found by the jury. *See Formosa Plastics,* 960 S.W.2d at 51 (reversing and remanding because there was no probative evidence to support the entire damage award but there was some evidence of the correct measure). We overrule appellants' third issue.

Because we have held the evidence is legally and factually sufficient to support the amount of damages found by the jury, it is not necessary for us to address appellants' first and second issues. Tex.R.App. P. 47.1.

■ In their fourth issue, appellants complain the evidence is legally and factually insufficient to support the jury's finding that Kebert discovered Halley's fraud in July 1994. This finding was relevant to appellants' statute of limitations defense. Appellants contend Kebert admitted he knew he was being defrauded by November 7, 1990, or at least by May 23, 1991. Because Kebert did not file suit until July 23, 1995, more than four years later, appellants argue his fraud claim is barred by limitations. After reviewing the record, we conclude there is evidence to support the jury's finding that Kebert discovered Halley's fraud in July 1994.

Kebert testified that Halley always had an excuse for not paying the renewals. These excuses included the inability of the company to pay at the time and no time to make the complicated calculations. In a conversation taped on August 10, 1993, Halley told Kebert that MASA would pay the renewals "[h]opefully by this weekend." Kebert received some checks as late as March 1994. In a taped conversation in June 1994, Halley indicated he wanted MASA attorney Tim Green to look at Kebert's calculations. A subsequent taped conversation between Kebert and Green in July 1994 showed Green could not decipher Kebert's calculations, that Halley was unwilling to pay anything but a final lump-sum, that Kebert was not willing to accept Halley's offer because he believed commissions on vested yearly commissions would be worth more over the course of years, and Green's comment that Kebert would have to take legal action.

In addition, the jury heard testimony that Halley and Kebert had been friends since at least their teenage years. Based on this evidence, the jury could have found that up until the July 1994 conversation with Green, Kebert believed his friend, Halley, would pay the renewals. We overrule appellants' fourth issue.

■ By their fifth issue, appellants contend the damages recovered against Halley are duplicative of those recovered against MASA, and that Kebert should have elected a theory of recovery. Appellants rely on *Waite Hill Serv., Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182 (Tex.1998), in support of their argument. We find that *Waite* is distinguishable from this case.

The damages found by the jury in answer to two questions in *Waite* were for the same losses. *Id.* at 184. In one question, the jury was asked the amount of the losses payable under an insurance policy and in the other question, the jury was asked to find the amount owed for specific losses listed. *Id.* The amount found for the specific damages was exactly the same as that found for the general loss question under the policy. *Id.* Because the only recovery possible was under the terms of the policy, the supreme court held that awarding damages for both questions was

a double recovery. *Id.* Also, in *Waite*, the damages were assessed against one defendant.

Here, the judgment against MASA is for breach of contract damages and the judgment against Halley is for fraud damages. The jury was asked to determine the amount of commissions Kebert lost because of Halley's fraud. Although the damages awarded to Kebert were for renewal commissions lost as a result of the breach of contract, there was evidence of additional commissions the jury could have believed were lost to Kebert because of Halley's fraudulent acts. The record reflects that Halley promised to pay Kebert one dollar for every membership sold in a manner similar to the presentation Kebert developed for the Valley. Halley told Kebert not to give up on receiving this commission, but it was never paid. In addition, Halley developed a policy whereby any renewal not received by thirty days before the membership expired became a nonactive account not credited to the salesmen. He did not explain this policy to the salesmen, and it was not stated in the contract. Halley repeatedly claimed the company was in financial distress but promised to pay Kebert when things were better. There is some evidence that the financial woes, if any, were caused by Halley's personal spending of company monies. Based on this evidence and Kebert's pleadings, we conclude the trial court did not award Kebert a double recovery. *See Balogh v. Ramos*, 978 S.W.2d 696, 702 (Tex.App.—Corpus Christi 1998, pet. denied). We overrule appellants' fifth issue.

■ The last issue raised by appellants is the proper amount of pre-judgment interest assessed by the trial court. Appellants contend the trial court assessed ten percent interest instead of the six percent authorized by article 5069–1.03 of the Texas Revised Civil Statutes. *See* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Law 3422 (amended 1999) (Current version at Tex. Fin.Code Ann. § 302.002 (Vernon 2000).

Although the trial court did not explain its calculations, we conclude that all renewals were due Kebert by March 3, 1994, the date of Kebert's last pay check for renewals and the date after which MASA stopped paying Kebert's renewal commissions because of his threat to sue. The trial court awarded $228,825 in pre-judgment interest. Following article 5069–1.03, the trial court should have calculated pre-judgment interest at six percent per year from thirty days after March 3, 1994 [2] to July 23, 1997, the date of the judgment. *See id.*[3] The time for which interest is owed is three years and 112 days,[4] and the correct amount of pre-judgment interest owed on the contract claim is $223,425.[5] To arrive at its total of $228,825, however, the trial court calculated the interest from March 3, 1994, which added an additional thirty days and $5,400 to the total. Because the trial court erred in its calculations, we sustain appellants' sixth issue and reform the trial court's judgment.

The trial court's judgment against Medical Air Services Association is reformed to include pre-judgment interest for 3.31 years at the rate of six percent for a total amount of $1,348,425, plus attorney's fees

---

**2.** April 2, 1994 is thirty days after March 3, 1994..

**3.** Former article 5069–1.03 does not specify whether the interest is to be simple interest or compounded. The supreme court has recently held that pre-judgment interest is to be calculated as simple interest. *Johnson & Higgins of Tex. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex.1998). Thus, we calculate the interest as simple interest. The difference between "simple interest" and "com-

pound interest" is that "simple interest" does not merge with principal and, thus, does not become part of the base on which future interest is calculated. Black's Law Dictionary 813 (6th ed.1990).

**4.** 112/365=.31 years

**5.** $1,125,000 × 6% interest × 3.31 years = $223,425.

in the amount of $60,000. The trial court's judgment, as reformed, is affirmed.