**JHC VENTURES, L.P., JHC Holding Co., Hoss Equipment Co., and Gregg M. Hoss, Appellants,**

v.

**FAST TRUCKING, INC., Appellee.**

No. 04–01–00251–CV.

Court of Appeals of Texas, San Antonio.

Nov. 27, 2002.

Ana Lisa Garza, G. Allen Ramirez, Ramirez & Garza, L.L.P., Rio Grande City, Scott Patrick Stolley, Stephen C. Schoettmer, Victor D. Vital, Thompson & Knight, L.L.P., Dallas, for appellant.

Roger Reed, Alberto L. Guerrero, Victor M. Carrera, Reed, Carrera & McLain, L.L.P., McAllen, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, and KAREN ANGELINI, Justice.

Opinion by KAREN ANGELINI, Justice.

This appeal involves a commercial dispute arising from alleged defects in dump trailers sold to Fast Trucking, Inc. ("Fast Trucking"). Following a jury verdict in favor of Fast Trucking, the trial court entered judgment accordingly and ordered JHC Ventures, L.P. ("JHC Ventures"), JHC Holding Co. ("JHC Holding"), Hoss Equipment Co. ("Hoss Equipment"), and Gregg M. Hoss ("Hoss") to pay damages. JHC Ventures, JHC Holding, Hoss Equipment, and Hoss appeal the trial court's judgment. We affirm the judgment as modified.

## BACKGROUND

Gregg Hoss, the president and sole shareholder of Hoss Equipment, was informed by one of Hoss Equipment's employees, Martin Kirbie, that a man named Frank Johnson had invented a new type of dump truck, the "Shape Shifter." Unlike the typical dump truck, the Shape Shifter was designed to possess dual-dumping capabilities: it could dump its loads by raising up its trailer and dumping its load out the back or it could dump its load through its doors in the belly of the hopper. After being informed of these dual-dumping capabilities, Hoss decided that Hoss Equipment should invest in the Shape Shifter. As president of Hoss Equipment, Hoss formed a wholly owned subsidiary of Hoss Equipment, JHC Holding. He then made JHC Holding the general partner of yet another newly formed limited partnership, JHC Ventures. Hoss formed JHC Ventures for the purpose of obtaining the patent for the Shape Shifter, manufacturing the Shape Shifter, and then selling it.

Fast Trucking uses dump trailers to haul bulk materials, like sand, gravel, grain, asphalt, and sludge. According to Fast Trucking, through an advertisement emphasizing the Shape Shifter's unique dual-dumping capabilities, Sam Vale, Fast Trucking's sole shareholder, was solicited by Hoss. Interested in these unique capabilities, Vale entered into negotiations with Hoss to purchase some Shape Shifters. According to Vale, Hoss made express assurances during these negotiations about the superior durability of the Shape Shifters, their capability to haul various types of materials, and their dual-dumping capabilities. For example, if Fast Trucking bought certain accessories, Hoss assured Vale that the Shape Shifter could haul grain, sand, and sludge. At trial, Fast

Trucking alleged that these representations constituted an express warranty.

The negotiations between Hoss and Vale being successfully completed, Vale signed, on behalf of Fast Trucking, a commercial invoice on December 13, 1994 to buy five new Shape Shifters for $175,000, plus $21,000 in federal excise tax. Fast Trucking bought the accessories under a separate invoice for $9,750. Although the invoice, which was signed by both parties, reflects that JHC Ventures is the seller, Vale testified at trial that he thought Hoss Equipment was the seller. On December 29, 1994, Fast Trucking paid in full for all five completed Shape Shifters.

Within a few months of delivery, Fast Trucking began experiencing problems with the Shape Shifters. Fast Trucking returned the Shape Shifters to JHC Ventures for repairs, but alleges that these repairs were never successful. On October 30, 1998, Fast Trucking sued JHC Ventures and Hoss Equipment, later adding Hoss as a defendant. Then, in November 1998, Fast Trucking sold the Shape Shifters and their accessories for $43,000. After hearing all of the evidence presented at trial, the jury found (1) that JHC Ventures breached an express warranty, committed fraud, violated the DTPA, engaged in an unconscionable action, and acted knowingly, (2) that Hoss Equipment committed fraud, violated the DTPA, engaged in an unconscionable action, and acted knowingly, (3) that Fast Trucking should have known about the fraud on December 13, 1994, (4) that Fast Trucking failed to use ordinary care in the use and operation of the trailers, (5) that Fast Trucking caused 40% of the damages, Hoss Equipment caused 20% of the damages, Gregg Hoss caused 30%, and JHC Ventures caused 10%, (6) that Hoss Equipment is responsible for the conduct of JHC Holding, and (7) that Gregg Hoss is responsible for the conduct of JHC Holding.

As for damages, the jury found that benefit of the bargain damages are $104,500, that transportation and freight costs for returning the trailers for repairs are $5,000, and that Hoss Equipment and JHC Ventures should each pay $50,000 in exemplary damages. Further, the jury found that Fast Tracking was not entitled to any damages based on JHC Ventures' and Hoss Equipment's knowing conduct. Finally, the jury found that Fast Trucking's trial attorney's fees are $150,000, its fees for an appeal to the court of appeals will be $40,000, its fees for making or responding to a petition for review to the supreme court will be $30,000, and if a petition for review is granted by the supreme court, its fees will be $45,000.

Based on these findings, the trial court entered judgment. The judgment provides that (1) Hoss Equipment, JHC Ventures, and JHC Holding, as general partner of JHC Ventures, are jointly and severally liable to Fast Trucking for its actual damages in the amount of $109,500, (2) Gregg Hoss, Hoss Equipment, JHC Ventures, and JHC Holding, as general partner of JHC Ventures, are jointly and severally liable to Fast Trucking for exemplary damages in the amount of $50,000, (3) Hoss Equipment is solely and separately liable to Fast Trucking for an additional award of exemplary damages in the amount of $50,000, and (4) Hoss Equipment, JHC Ventures, and JHC Holding, as general partner of JHC Ventures, are jointly and severally liable to Fast Trucking for its attorney's fees.

## BENEFIT OF BARGAIN DAMAGES

■ According to appellants, there is no evidence to support the jury's award of $104,500.00 in benefit of the bargain dam-

ages.[1] In resolving damages issues, a jury's finding will be upheld if it is within the range of the testimony regarding the amount of damages incurred. *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 321 (Tex.App.-San Antonio 2002, rule 53.7(f) motion filed). Here, both parties agree that section 2.714 of the Uniform Commercial Code applies. *See* TEX. BUS. & COMM.CODE ANN. § 2.714 (Vernon 1994). Section 2.714, "Buyer's Damages for Breach in Regard to Accepted Goods," provides:

(a) Where the buyer has accepted goods and given notification (Subsection (c) of Section 2.607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(b) The measure of damages for breach of warranty is the *difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted,* unless special circumstances show proximate damages of a different amount.

(c) In a proper case any incidental and consequential damages under the next section may also be recovered.

*Id.* (emphasis added).

The purchase price is some evidence of the value of the goods as warranted. *See Sweco, Inc. v. Continental Sulfur & Chem.,* 808 S.W.2d 112, 118 (Tex.App.-El Paso 1991, writ denied) ("Proof of the contract purchase price, standing alone, is sufficient to support a finding that that amount was the fair market value as warranted by the seller."). At trial, there was testimony of the Shape Shifters' purchase price. Fast Trucking's sole shareholder, Sam Vale, testified that Fast Trucking purchased the five Shape Shifters for $196,000 including federal excise tax. Additional accessories totaled $9,750, bringing Fast Trucking's total cost to $205,750. Although appellants concede that the purchase price is evidence of the Shape Shifters as warranted, they argue that there is no evidence of section 2.714's second requirement, the value of the goods at the time of delivery.

As evidence of the Shape Shifters' value at the time of delivery, Fast Trucking emphasizes Vale's testimony at trial. According to Vale, he was interested in the Shape Shifters because of their dual-dumping capabilities, which made the Shape Shifters economically attractive. Within six months of purchase, however, the Shape Shifters had numerous problems. They could not haul sludge, because it would seep out. Some of the Shape Shifters' hydraulic lines and structural welds were broken. The Shape Shifters' belly dump doors would not function properly. However, in spite of the problematic belly dump doors, the Shape Shifters' back-dump feature worked most of the time. Because this feature usually func-

---

**1.** Fast Trucking contends that "benefit of the bargain" is not the exclusive measure of damages for delivery of non-conforming goods. Indeed, comment 3 to section 2.714 of the Texas Business and Commerce Code explains that benefit of the bargain describes the "usual, standard and reasonable method of ascertaining damages in the case of breach of warranty but is not intended as an exclusive measure." TEX. BUS. & COM.CODE ANN. § 2.714 cmt. 3 (Vernon 1994). Here, however, "benefit of the bargain" was the question submitted to the jury. Because we review the evidence in light of the question submitted to the jury, *see City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 71 (Tex.2000), we must determine whether there is legally sufficient evidence to support the award of benefit of the bargain damages.

tioned, Fast Trucking argues that the Shape Shifters' value as delivered is equivalent to a back-dump trailer.[2] And, according to Fast Trucking, Vale's testimony is evidence of the value of such a trailer. As an experienced individual in the trucking industry since 1975, Vale testified that in 1994, he received quotes between $15,000 to $17,000 for a "back dump" trailer. The jury, relying on this testimony, could infer that the Shape Shifters as delivered were each worth approximately $15,000 to $17,000, or $75,000 to $85,000 for all five Shape Shifters. Adding the federal excise tax of 12%, the jury's verdict of $104,500 was well within the range of the evidence. *See Aboud v. Schlichtemeier*, 6 S.W.3d 742, 748 (Tex.App.-Corpus Christi 1999, pet. denied) (reiterating "the general rule that the trier of fact has broad discretion in assessing damages where the law provides no precise legal means, and the jury's findings will not be disregarded merely because the jury's reasoning in arriving at its figures may be unclear").

In response, appellants contend that a price quote is not evidence of the Shape Shifter's actual value, but is "at most, only an unaccepted offer to sell, and an unaccepted offer is no evidence of value." For support, they rely on *Lee v. Lee*, 47 S.W.3d 767 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). In the context of real estate, *Lee* noted that "Texas courts have long held that unaccepted offers to purchase property are no evidence of market value of property." *Id.* at 785. Lee emphasized that an unaccepted offer is "uncertain and speculative," because "evidence of an unaccepted offer does not establish the good faith of the person making the offer." *Id.*

Here, however, Vale testified about price quotes he received from commercial vendors. A valid distinction can be made between offers in the relatively uncertain real estate market and price quotes from commercial vendors of goods. Thus, Vale's testimony about price quotes he received from commercial vendors is some evidence of the value of the Shape Shifters as delivered. We overrule the appellants' first issue.

## TRANSPORTATION COSTS

██ Appellants also argue that there is no evidence of $5,000 in transportation costs. We agree. Although a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests. *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 304 (Tex.App.-San Antonio 1999, pet. denied). Appellants emphasize that Vale's testimony is only an estimate. Vale testified that every time it sent a Shape Shifter to Dallas for repairs, it cost Fast Trucking *about* $500 and that Fast Trucking had to make *about* ten trips.

Fast Trucking responds that Gregg Hoss, himself, admitted that Vale's testimony was accurate:

Q:  And the story we heard about how many times these trailers went in and out of your facility, this is a fair characterization of it?

A:  Yes, sir. That is a correct characterization based upon our records.

Additionally, Hoss admitted that the Shape Shifters were brought to Dallas for repairs at least seven times and that there were other repairs that were not documented:

2.  Fast Trucking also emphasizes that it is undisputed that the Shape Shifters were unique trailers. At the time Fast Trucking purchased the Shape Shifters, there was no

developed market for them; no market was later developed because the Shape Shifters were too heavy to be commercially viable.

Q: Have you now talked about all the repairs that Fast Trucking performed with regard to these trailers?

A: No. There are other repairs at Hoss Equipment. That's important.

Q: I should have said that.

A: That were documented. There were some other repairs that we did not document, some other materials, that we used that we never documented the cost of material.

There is, therefore, some evidence of transportation costs.

There is not, however, any evidence of the reasonableness of these costs. In *2 Fat Guys Investment, Inc. v. Klaver*, 928 S.W.2d 268, 273 (Tex.App.-San Antonio 1996, no writ), we held that there must be evidence that the cost of repairs was both reasonable and necessary:

> Appellant is correct in its assertion that an award of damages may not be properly supported by simply establishing the amount paid. There must also be evidence that the amount paid was both reasonable and necessary. In order to establish that repairs and expenses are reasonable and necessary, it is not imperative that the actual terms "reasonable" and "necessary" be used. Instead, the damaged party is only required to present evidence of damages sufficient and competent enough to justify the jury's conclusion that the costs are in fact reasonable and necessary.

*Id.* (citations omitted). Because there was no evidence presented at trial of the reasonableness of the transportation costs, we sustain this issue.

**3.** Indeed, under the UCC, a party, depending on which claim he brings, is entitled to different remedies. *Compare* TEX. BUS. & COM.CODE ANN. § 2.711 (Vernon 1994) (remedies avail-

## ATTORNEY'S FEES

We must now decide whether a party can recover attorney's fees under a UCC breach of warranty claim. Fast Trucking argues that such an award is permitted under section 38.001(8) of the Texas Civil Practices and Remedies Code. Section 38.001(8) provides that a person "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... (8) an oral or written contract." TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). We, therefore, turn to whether under section 38.001(8), a UCC breach of warranty claim is the same as a claim for breach of contract.

■ In *Southwestern Bell Telephone Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex.1991), the supreme court noted that the "UCC recognizes that breach of contract and breach of warranty are not the same cause of action."[3] Because *Southwestern Bell* noted that these two claims are distinct, the First Court of Appeals in *Harris Packaging Corp. v. Baker Concrete Construction Co.*, 982 S.W.2d 62, 69 (Tex. App.-Houston [1st Dist.] 1998, pet. denied), observed that a party could not recover attorney's fees under a breach of express warranty claim. *See also Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 897 (Tex.App.-Houston [1st Dist.] 2002, no pet.). We agree and hold that a party cannot recover attorney's fees under a UCC breach of warranty claim. This issue is sustained.

## GREGG HOSS

■ According to appellants, the judgment should be modified to omit any reference to Gregg Hoss, because the statute of

able under UCC breach of contract claim), *with id.* § 2.714 (remedies available under UCC breach of warranty claim).

limitations bars Fast Trucking from recovering against Gregg Hoss for fraud. At trial, Fast Trucking argued that Gregg Hoss committed fraud by misleading it into believing that Hoss Equipment was the seller of the Shape Shifters when JHC Ventures was the true seller. Question 18 on the jury charge asked by what date Fast Trucking should have discovered "all of the false, misleading, or deceptive acts or practices, fraud, unconscionable action or course of action, and failure(s) to comply with a warranty regarding the Shape Shifter trailers." The jury answered December 13, 1994. December 13, 1994 is the date on which Fast Trucking signed the commercial invoice with JHC Ventures's letterhead. The invoice clearly states that the agreement was "between JHC VENTURES, L.P. hereinafter also referred to as the 'Seller' and FAST TRUCKING INC. referred to as 'Buyer.'" On December 1999, over five years after this date, Fast Trucking sued Gregg Hoss. Thus, based on the jury's answer to Question 18, Fast Trucking's fraud action against Gregg Hoss is time-barred. Because Fast Trucking's claim is barred, the judgment should be modified to omit any reference to Gregg Hoss.

Despite Fast Trucking's claim being barred, it argues that the judgment still properly orders Gregg Hoss to pay damages as the alter-ego of JHC Ventures. We disagree and hold that the statute of limitations bars any theory of recovery against Gregg Hoss. However, even if the statute of limitations did not bar Fast Trucking's claim against Gregg Hoss, Hoss would still not be liable under an alter-ego theory.

Pursuant to the judgment, Gregg Hoss is jointly and severally liable for $50,000 in punitive damages assessed against JHC Ventures. The jury found that JHC Ventures and Hoss Equipment had committed fraud.[4] With respect to JHC Ventures and Hoss Equipment, question 19 asked the jury whether exemplary damages should be assessed against each defendant and if so, what should be the amount. The jury answered in the affirmative, finding that JHC Ventures and Hoss Equipment should each pay $50,000 in exemplary damages. In the trial court's judgment, however, Gregg Hoss is jointly and severally liable with JHC Ventures, assumably under an alter-ego theory.

The jury's verdict does not support such an alter-ego finding. The alter-ego question in the jury charge asked whether Gregg Hoss was responsible for the conduct of JHC Holding, a non-party to this case. The jury was not asked to determine whether Gregg Hoss was the alter-ego of JHC Ventures. Without such a finding by the jury, there is no basis for the trial court to hold Gregg Hoss jointly and severally liable with JHC Ventures. We sustain this issue and will modify the judgment to omit any reference to Gregg Hoss.

## JHC HOLDING

Similarly, because JHC Holding has never been a party to this lawsuit, the appellants request that we modify the judgment to omit any reference to JHC Holding. Despite never being named a party, Fast Trucking argues that JHC Holding, as the general partner of JHC Ventures, should be jointly and severally liable for actual damages, prejudgment interest, punitive damages, attorney's fees, and court costs, because it was served with citation on behalf of JHC Ventures. In support of this argument, Fast Trucking

---

4. Although the jury also found that Gregg Hoss had committed fraud, it was never asked to determine whether Gregg Hoss should pay exemplary damages to Fast Trucking.

relies on *Fincher v. B & D Air Conditioning & Heating Co.*, 816 S.W.2d 509, 511 (Tex.App.-Houston [1st Dist.] 1991, writ denied), which determined whether "a partner in a Texas general partnership, although not named *individually* as a defendant in a petition, can be held individually liable because he was served with citation on behalf of the partnership." The plaintiff's petition in *Fincher* named as defendants "Yellow Ribbon Enterprises and William R. Fincher, *Trustee*," stating that Yellow Ribbon, a partnership, could be served with process "by serving William R. Fincher, its general partner." *Id.* The citation served on Fincher was addressed "TO: William R. Fincher." *Id.* Despite not being a named defendant, Fincher was held liable, both individually and as trustee for the corporate general partner. In upholding the trial court's judgment, the First Court of Appeals noted that section 17.022 of the Texas Civil Practice and Remedies Code provides that "[c]itation served on one member of a partnership authorizes a judgment against the partnership *and the partner actually served.*" *Id.* at 512 (emphasis added).[5] Although the court of appeals agreed that "the better practice is to name the partnership and each individual partner as a defendant in the suit," it held that the citation issued to William Fincher was sufficient for him to be held liable as the general partner under section 17.022:

> Appellees named Fincher as a defendant, in the capacity of "Trustee." The petition also alleged Fincher was a general partner of Yellow Ribbon. The evidence showed that Yellow Ribbon was a Texas general partnership composed of two partners, Fincher, individually, and Fincher as Trustee for a corporation. The only partner named as a defendant

in appellee's petition was "Fincher, Trustee." *But Fincher was served with citation, both as general partner and as William Fincher.*

> The factual allegations in the pleadings state, and the proof showed, that Fincher was a general partner of Yellow Ribbon, that Yellow Ribbon and Fincher owned the involved apartment complex, and that Fincher made certain representations and agreements. Fincher signed the contracts for Yellow Ribbon; he signed the check to the appellees; and he had personal knowledge of all the events involved in the lawsuit. Yellow Ribbon acted by and through Fincher. We hold that Fincher, although not named as a defendant individually, when served as general partner for Yellow Ribbon, was before the trial court in his capacity as general partner and, once the partnership liability was established, a judgment could be taken against him individually.

*Fincher*, 816 S.W.2d at 512–13.

*Fincher's* facts, however, are distinguishable from those presented here. In this case the citation stated, "To: Gregg M. Hoss, by serving him with process as registered agent and president of JHC Holding Company, general partner of Defendant JHC Ventures, L.P." The citation was directed to "Gregg Hoss"; it was not directed to "JHC Holding Co., by and through its registered agent Gregg Hoss." The citation was, therefore, insufficient under section 17.022. *See Stafford Construction Co. v. Martin*, 531 S.W.2d 667, 668, 670 (Tex.Civ.App.-El Paso 1975, no writ) (holding that citation directed to "Robert A. Stafford, registered agent for Stafford Construction Company, Inc." was defective and "will not support a default judgment

---

**5.** Since *Fincher,* the only modification to section 17.022 has been the substitution of "cita-tion" for "service." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.022 (Vernon 1997).

against the named defendant [Stafford Construction]"). We sustain this issue.[6]

## PROPORTIONATE RESPONSIBILITY

Appellants argue that the Texas Proportionate Responsibility Statute, TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 1997), applies to Fast Trucking's claims for UCC breach of warranty and for fraud. Section 33.001, applicable to any cause of action based on tort, provides that a claimant may not recover damages if his percentage of responsibility is greater than 50 percent. *Id.*

### A. UCC Breach of Warranty

■ According to appellants, section 33.001 applies here, because Fast Trucking's breach of warranty claim sounds in tort. *See id.* § 33.002 (explaining that chapter 33 "applies to any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought"). For support, appellants cite dicta in *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456, 463 (Tex.1980):

> We recognize this Court has broadly stated when considering a common law remedy that an implied warranty arising from sales sounds in tort and not in contract.

*Id.* (citations omitted). Appellants, however, failed to quote the remaining portion of this paragraph:

> These decisions, however, *are not determinative of our holding here that a statutory cause of action* exists under the Code for personal injuries suffered as result of a breach of implied warranty. The Code provides a *statutory remedy*, hence *the traditional distinctions between tort and contract are not relevant.*

*Id.* (emphasis added) (citations omitted). *Garcia* is not controlling here.[7]

Appellants further urge us to hold that Fast Trucking's UCC breach of warranty claim sounds in tort because it was "submitted to the jury essentially as a misrepresentation claim, making it more like a tort claim than a contract claim." We disagree. The jury was asked if certain representations became part of the basis of Fast Trucking's agreement to purchase the Shape Shifters. If so, the jury was then asked whether the Shape Shifters failed to meet or conform to this agreement creating the warranty.[8] Although not dispositive to this issue, we note that a misrepresentation claim was not submitted to the jury.

Appellants cannot point to any provision of the UCC in the Texas Business and Commerce Code in support of their argument that section 33.001 of the Texas Proportionate Responsibility Statute applies

6. Because we have found that JHC Holding was not adequately served under section 17.022, we need not reach the issue of whether JHC Holding would be liable under an alter-ego theory.

7. We further note that, unlike Fast Trucking, the plaintiff in *Garcia* brought a claim for *personal injuries* resulting from a breach of warranty.

8. Question No. 2 asked, "Did any of the representations that you have found in response

to Question 1 become *part of the basis of Fast Trucking's agreement* to buy the Shape Shifters?" (emphasis added). Question No. 3 asked, "For each representation that you have found *was part of the basis of Fast Trucking's agreement* to buy the Shape Shifters, did the retailers fail to meet or conform to such representations and, if so, was such failure a proximate cause of harm, if any, to Fast Trucking." (emphasis added). The jury answered both questions in the affirmative.

to a UCC breach of warranty claim. Nor can appellants direct us to a Texas Supreme Court case holding same. Without such support, we refuse to extend section 33.001 to UCC breach of warranty claims.[9]

### B. Fraud

■ As fraud is clearly a claim based on tort, the Texas Proportionate Responsibility Statute applies to Fast Trucking's fraud claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.002 (Vernon Supp.2002). The jury found that Fast Trucking was responsible for 40% of its damages while appellants Gregg Hoss, Hoss Equipment, and JHC Ventures were responsible for 30%, 20%, and 10% respectively. Because any claim against Gregg Hoss is barred, appellants argue that we should re-calculate the remaining responsibility, comparing Fast Trucking's responsibility to that of the remaining appellants. In support, appellants rely on *Sanchez v. Brownsville Sports Center, Inc.*, 51 S.W.3d 643 (Tex. App.-Corpus Christi 2001, pet. granted), a case in which the court of appeals did reapportion the responsibility between the parties.

*Sanchez*, a products liability case, arose out of a three-wheel all-terrain vehicle accident, causing the death of the plaintiffs' ten-year-old son. *Id.* at 652. Because the plaintiffs had allowed their son to drive the vehicle without supervision, a question about comparative responsibility was submitted to the jury. *See id.* at 652–655. The jury found that the mother was a third percent responsible, the father was a third percent responsible, and the manufacturer was a third percent responsible. *Id.* at 656. Combining the plaintiffs' re-

sponsibility, the trial court entered a take-nothing judgment pursuant to section 33.001. *Id.* at 654. On appeal, the court held that the trial court should not have combined the plaintiffs' percentages of responsibility and barred their recovery, because "[a] fair reading of the relevant statutory provisions precludes combining percentages for claimants to bar recovery, just as it bars combining defendants' percentages to determine if joint and several liability is appropriate." *Id.* at 656. Despite the erroneous submission, the court of appeals reapportioned the parties responsibility:

> In this case, the percentage of responsibility of Mr. Ramos (33 1/3%) is equal to the percentage of responsibility of Honda (33 1/3%); and the percentage of responsibility of Mrs. Ramos is equal to the percentage of responsibility of Honda (33 1/3%). Thus, the portion by which each appellant's recovery is diminished is by fifty percent.... [T]he "jury's findings represent the proportions of negligence of each plaintiff *as compared to that of the defendants*, and [ ] these proportions would have been substantially the same, *if submitted to the same jury*, whether or not the negligence of the other plaintiff had been submitted."

*Id.* at 657 (emphasis added) (citation omitted).

Appellants request that we follow the reasoning in *Sanchez* and, ignoring any percentage of responsibility assigned to Gregg Hoss by the jury, compare Fast Trucking's responsibility to that of the Hoss Equipment and JHC Ventures. We

---

9. Appellants argue in their reply brief that if the Texas Proportionate Responsibility Statute *does not apply* to UCC breach of warranty claims, then alternatively, *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), a common-law comparative responsibility scheme, does apply. Appellants, however, failed to urge this issue in their brief on the merits; by urging it for the first time in their reply brief, they waived this issue on appeal. *See* TEX.R.APP. P. 38.1, 38.3.

decline to do so. In *Sanchez*, while the trial court erroneously combined the responsibility of the plaintiffs, the jury still should have determined their percentage of responsibility. Here, the jury assigned responsibility to Gregg Hoss when it should not have. We, therefore, cannot be certain that the proportions assigned to Fast Trucking, Hoss Equipment, and JHC Ventures would have been the same if the question had been properly submitted to the jury. As a result, the proper remedy is to remand.

## C. DTPA

Similarly, the Texas Proportionate Responsibility Statute applies to Fast Trucking's DTPA claim. TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(h) (Vernon Supp.2002). For the same reasons, the remedy here would be to remand. However, because the jury found for Fast Trucking with respect to its UCC breach of warranty claim, we can uphold the judgment on that claim.[10]

## ELECTION OF REMEDIES

■■■■■ Under Fast Trucking's UCC breach of warranty claim, we must decide whether the judgment erroneously awards Fast Trucking attorney's fees *and* punitive damages. At oral argument, Fast Trucking explained that it made an election to collect its benefit of the bargain damages under its UCC breach of warranty claim, and not under its fraud claim. Despite making this election, Fast Trucking maintains that it can still recover attorney's fees under its breach of warranty claim and exemplary damages under its fraud claim. For Fast Trucking to collect under

its fraud claim, we would have to reverse and remand the cause for a new trial. However, even so, Fast Trucking could still not collect both attorney's fees and exemplary damages, as doing so is a double recovery.[11]

■■■■■ A party who seeks redress under two or more theories of recovery for a single wrong must elect, before the judgment is rendered, under which remedy he wishes the court to enter judgment. *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 422 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Where a prevailing party fails to make that election, the trial court should utilize the findings affording the greater recovery and render judgment accordingly. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987); *Star Houston*, 886 S.W.2d at 423. Where the trial court fails to do so, the appellate court will modify the trial court's judgment to effect such an election. *Star Houston*, 886 S.W.2d at 423.

■■■■■ A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a "double recovery." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex.1998); *Birchfield*, 747 S.W.2d at 367; *Foley v. Parlier*, 68 S.W.3d 870, 882–83 (Tex.App.-Fort Worth 2002, no pet.). In this context, a double recovery exists when a plaintiff obtains more than one recovery for the same injury. *Waite Hill*, 959 S.W.2d at 184; *Foley*, 68 S.W.3d at 882–83. The prohibition against double recovery is a corollary of

---

10. Upholding the judgment with respect to Fast Trucking's UCC breach of warranty claim is also consistent with its election at trial.

11. Fast Trucking contends in its brief that the appellants have waived this election-of-remedies argument by not pleading it as an affirmative defense. We disagree. By objecting to the judgment on appeal, the appellants have adequately preserved this issue.

the rule that a party is entitled to but one satisfaction for the injuries sustained by him. *Foley,* 68 S.W.3d at 883.

In *Foley v. Parlier,* 68 S.W.3d 870 (Tex. App.-Fort Worth 2002, no pet.), Parlier filed suit against his co-partner, Foley, alleging that Foley misrepresented what Parlier would receive if he entered into the contract. *Id.* at 876. Finding that Foley breached the partnership contract and committed fraud, the jury awarded contract damages of $6,509.35, attorney's fees of $43,750, fraud damages of $12,750, and exemplary damages in the amount of $43,750. *Id.* at 877. The trial court required Parlier to elect between fraud and breach of contract remedies. *Id.* On appeal, Parlier argued that he should not have had to make that election.

In deciding this issue, the Fort Worth Court of Appeals relied on the supreme court's opinion in *Waite Hill Services, Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182 (Tex.1998). *See Foley,* 68 S.W.3d at 883. In *Waite Hill,* the supreme court held that the plaintiff was required to elect between damages for repairs and restoration of property awarded under an insurance policy and under the DTPA, because the latter award was duplicative of the same elements awarded under the policy. *Foley,* 68 S.W.3d at 883 (citing *Waite Hill,* 959 S.W.2d at 185). In so holding, the supreme court noted that the plaintiff "may have suffered some tort losses, distinct from its claims on the policy." *Waite Hill,* 959 S.W.2d at 185. The Fort Worth Court of Appeals understood this language to indicate that recovery might have been available for such losses

in addition to the contract damages, but that the plaintiff had offered no evidence as to any such additional recoverable losses. *Foley,* 68 S.W.3d at 883.[12] The Fort Worth Court of Appeals held, however, that Parlier was not entitled to recover any such additional losses. It noted that the damages found for breach of contract and fraud are based upon *alternative* remedies. *Id.* Even though the amounts and elements found under each theory of recovery appear different, the Fort Worth Court of Appeals explained that awarding damages for either theory makes Parlier whole, and awarding both would constitute two recoveries for the same injury, i.e., a prohibited double recovery. *Id.*

Like Fast Trucking, Parlier argued that he should be entitled to recover both his contract and fraud damages under the reasoning in *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41 (Tex.1998). *Foley,* 68 S.W.3d at 885. The Fort Worth Court of Appeals distinguished *Formosa Plastics:*

> *Formosa Plastics* does not aid Parlier because it did not hold that both tort and contract damages are recoverable, nor did it involve whether a plaintiff must elect between contract and fraud damages. In fact, the opinion in *Formosa Plastics* reflects that the plaintiff there elected to recover only the damages awarded by the jury for fraudulent inducement and waived those awarded for breach of contract. 960 S.W.2d at 44. Only those damages awarded for fraudulent inducement were at issue on appeal. *Id.* We hold that the trial court

---

12. For example, the Fort Worth Court of Appeals noted that in *Medical Air Services Association v. Kebert,* 26 S.W.3d 663, 667–68 (Tex. App.-Corpus Christi 2000, pet. denied), a sales representative sued for sales commissions resulting from sales of an insurance product. The Corpus Christi Court of Appeals allowed recovery of both contract and fraud damages, noting that no double recovery resulted because the fraud damages constituted losses of additional commissions beyond the loss of renewal commissions awarded by the jury for breach of contract. *Id.*

correctly required Parlier to elect his remedy. *Foley*, 68 S.W.3d at 885. Thus, Parlier could recover exemplary damages under fraud or his attorney's fees under breach of warranty, but he could not collect both.

Applying the same reasoning as the *Foley* court, we hold that awarding damages for either breach of warranty or fraud makes Fast Trucking whole and awarding both constitutes a prohibited double recovery. We modify the judgment to reflect the greater recovery, that of Fast Trucking's UCC breach of warranty claim.[13]

## DISCOVERY SANCTION

Before Fast Trucking filed suit against Gregg Hoss individually, it issued a notice to depose him in McAllen. Appellants moved to quash the notice, maintaining that Hoss, as a nonparty, could not be compelled to appear in Hidalgo County and that the apex doctrine[14] shielded him from deposition. Appellants also moved for a protective order under the apex doctrine. The trial court denied the motion to quash, ordered Gregg Hoss to appear for deposition in Starr County, the place of suit, and ordered Hoss Equipment and JHC Ventures to pay $1,000 in reasonable attorney's fees "as a sanction for discovery abuse." On appeal, the appellants argue that the trial court erred in ordering monetary sanctions, because they had a good faith basis for bringing the motion and because Fast Trucking offered no evidence of reasonable attorney's fees.

We review a trial court's award of sanctions under the abuse of discretion standard. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex.App.-San Antonio 2000, pet. denied). Our scope of review is the entire record that was before the trial court. *Id.* We review the conflicting evidence in the light most favorable to the trial court's ruling, and draw all reasonable inferences in favor of the court's judgment. *Id.* Texas Rule of Civil Procedure 215.3, "Abuse of Discovery Process in Seeking, Making, or Resisting Discovery," permits a trial court to sanction a party for discovery abuse:

> If the court finds a party is abusing the discovery process in seeking, making or resisting discovery or if the court finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, or that a response or answer is unreasonably frivolous or made for purposes of delay, then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of Rule 215.2(b). Such order of sanction shall be subject to review on appeal from the final judgment.[15]

TEX.R. CIV. P. 215.3.

Although appellants had a good faith argument for moving to quash Hoss's deposition with regard to the place of the deposition, their argument that the deposition should be quashed under the

---

**13.** Because we have held (1) that Fast Trucking's fraud and DTPA claims would have to be remanded and (2) that Fast Trucking was required to make an election, we modify the judgment to only reflect Fast Trucking's UCC breach of warranty claim. As such, we need not decide whether there was sufficient evidence to support Fast Trucking's claim for unconscionability.

**14.** An "apex" deposition is a deposition of a corporate officer at the apex of the corporate hierarchy. *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex.1995) (orig. proceeding).

**15.** Fast Trucking's argument that the appellants should have raised this issue by mandamus is erroneous. Rule 215.3 clearly provides otherwise.

"apex" doctrine was suspect. Under *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex.1995) (orig. proceeding), when a party seeks to depose a corporate president or other high level corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official's affidavit denying any knowledge of relevant facts, the trial court should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information. If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. *Id.; see also In re Daisy Mfg. Co.*, 17 S.W.3d 654, 656–57 (Tex.2000) (orig. proceeding). After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate. *Crown Central*, 904 S.W.2d at 128.

Appellants attached Gregg Hoss's affidavit to their motion to quash and motion for protective order. In that affidavit, Hoss affirms that he has no unique or special knowledge in this case:

My primary responsibility is running the overall day-to-day operations of Hoss Equipment. I have minimal knowledge of the day-to-day operations and actions of JHC Ventures. Andrew J. Speer, III and Martin Kirbie bear that responsibility and have full knowledge of such operations and actions.

I have no unique or special knowledge regarding the matters referenced in the subpoena duces tecum served on me by Plaintiff. Such information would be and is in fact equally known and/or known to a greater degree by Andrew J. Speer, III and Martin Kirbie. In fact, I became aware of many issues raised in my subpoena duces tecum from discussions with Andrew J. Speer and/or Martin Kirbie.

Mr. Speer and/or Mr. Kirbie would have knowledge about any actions I may have taken in this case and are capable of testifying in that regard.

Consequently, I have no unique or superior personal knowledge regarding the matters delineated in the subpoena duces tecum served on me by Plaintiff, which presumably covers the intended areas of inquiry for my noticed deposition. Mr. Speer and/or Mr. Kirbie are capable of testifying on the matters specified in that subpoena.

At the hearing, Fast Trucking rebutted Hoss's affidavit by introducing portions of Martin Kirbie's deposition. In referring to Kirbie's deposition, the trial court noted:

I'm looking at page 48 of Martin Kirbie's statement of facts or deposition that says at line 7. Question: And if there were any design changes that were made during the development of these trailers, is there anybody at Hoss Equipment Company other than Mr. Hoss, Gregg Hoss, who would know the purpose of such changes? Answer: Answer as far as I know, no. They're not going to—well, you've read the statement of facts. I'm inclined to believe that, according to Mr. Kirbie, no one else knows why there was only 15 trailers that were made and built, or whatever it was—I just looked at it right now this morning.

Kirbie clearly testified that as far as he knew, Hoss was the only person with that knowledge. Based on Kirbie's deposition, the trial court was within its discretion to find that the appellants were wrongfully resisting discovery and to sanction them $1000.

■■■■ Finally, appellants argue that "in denying the motion, the trial court sanctioned Hoss Equipment and JHC Ventures $1,000 in attorney's fees, without any proof of fees incurred." Proof of the necessity or reasonableness of attorney's fees, however, is not required when such fees are assessed as sanctions. *Gorman v. Gorman*, 966 S.W.2d 858, 868–69 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). Rather, the amount of attorney's fees awarded as sanctions is within the sound discretion of the trial court. *Id.* at 869. We, therefore, overrule this issue.

### CONCLUSION

The judgment erroneously awards Fast Trucking transportation costs, attorney's fees, and exemplary damages. It also erroneously holds Gregg Hoss and JHC Holding liable. As such, we modify the judgment to omit any reference to JHC Holding Co., Gregg Hoss, transportation costs, attorney's fees, or exemplary damages. We affirm the judgment as modified.