# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00350-CV

**Appellant, Evans P. Weaver//Cross-Appellants, Jim Tobin and Linda Tobin**

**v.**

**Appellees, Jim Tobin and Linda Tobin//Cross-Appellees, Evans P. Weaver;
Weaver Interests, Inc.**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. GN301325, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jim and Linda Tobin sued Evans P. Weaver for fraud in connection with Weaver's construction of an auto park and gravel driveway on the Tobins' property. The Tobins also sued Weaver Interests, Inc. for breach of contract and DTPA violations. The jury returned a unanimous verdict in favor of the Tobins against both defendants and separately awarded damages against both Weaver individually and Weaver Interests. The Tobins filed an election of remedies in which they chose to recover actual damages for fraud from Weaver individually. Because identical actual damages had also been awarded against Weaver Interests for breach of contract and DTPA violations, the Tobins elected to recover only attorney's fees from Weaver Interests. In its final judgment, the court awarded actual damages against Weaver but entered no judgment against Weaver Interests and declined to award attorney's fees. Both Weaver and the Tobins appeal.

Weaver challenges the legal and factual sufficiency of the evidence, contending that the Tobins' allegations of an intentionally low bid and subsequent overcharges do not support the fraud judgment. In their cross-appeal, the Tobins appeal the court's refusal to award attorney's fees pursuant to their breach of contract and DTPA verdicts against Weaver Interests. The Tobins contend that, even though no judgment was entered against Weaver Interests because of an election of remedies, the jury's verdict supports an award of attorney's fees. We conclude that there was no evidence to support the fraud judgment and accordingly reverse and render judgment for Weaver. We further conclude that, because no judgment was entered against Weaver Interests, the Tobins were not entitled to an award of attorney's fees, and we, therefore, affirm the court's judgment as to Weaver Interests.

## BACKGROUND

For purposes of background information, we have, where possible, viewed the evidence in the light most favorable to the judgment rendered, as we are required to do. Because much of the testimony will be examined later in order to reveal its insufficiency, we will summarize very generally in this introduction.

In April 2002, the Tobins decided to have an auto park and gravel driveway constructed on their property. After friends recommended Weaver and after personally examining some of Weaver's work, the Tobins contacted Weaver and met with him on at least two occasions. At the conclusion of the second meeting, the Tobins hired Weaver to construct the auto park and gravel driveway.

During one of their meetings, the Tobins told Weaver that friends had paid $60,000

for the construction of a driveway. Weaver responded that $60,000 was too much to pay for a driveway. According to Mr. Tobin's testimony, Weaver's "exact words" were: "I can do it for cheap, cheap, cheap. I can do it fast and I can do it quick."

Following the second meeting, the Tobins hired Weaver to construct an auto park and gravel driveway, and the parties signed a cost-plus construction contract. In their testimony before the trial court, the parties agreed that the cost-plus contract was necessary because, at the time, neither knew the scope or extent of the work to be done. Although the scope and extent of the project were unknown and no detailed plans had been prepared, Weaver began work within a few days at the Tobins' request. The parties understood that plans would be developed over the course of the first few weeks of construction.

Within two weeks, construction costs had reached $150,000. Concerned about rising costs, the Tobins requested a cost estimate to complete the driveway. According to Mr. Tobin, Weaver told him that the cost to "fix the driveway the way [they] wanted it" was "$150[,000] total."

On June 12, when construction costs had exceeded $200,000 and the auto park was still not finished, the Tobins fired Weaver. A few days later, the parties met to discuss the unfinished auto park. At the meeting, the Tobins agreed to rehire Weaver for a fixed price of $25,000 to finish the auto park. But, still unhappy with Weaver's work by mid-August, the Tobins fired Weaver for the second and final time.

In a single lawsuit, the Tobins sued Weaver for fraud and Weaver Interests for breach of contract and DTPA violations. The jury awarded $245,957.23 in damages against Weaver for fraud and another $245,957.23 in damages plus $67,508.89 in attorney's fees against Weaver

3

Interests for breach of contract and DTPA violations. Agreeing that the jury's award would have resulted in a double recovery, the Tobins filed an election of remedies, electing to recover their actual damages for fraud against Weaver and their attorney's fees for DTPA violations against Weaver Interests. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex. 1991) (holding that a prevailing party is entitled to only one satisfaction for an injury). The district court entered judgment for actual damages against Weaver and no judgment against Weaver Interests. Despite the Tobins' election to recover damages against Weaver and attorney's fees against Weaver Interests, the court refused to award attorney's fees on the DTPA claim because no actual damages had been awarded against Weaver Interests for DTPA violations.

Both parties appeal. Weaver appeals the judgment of fraud. The Tobins appeal the district court's refusal to award attorney's fees against Weaver Interests.

**ANALYSIS**

In this case, the Tobins essentially seek to invalidate the cost-plus contract they executed with Weaver. In their second amended petition, the Tobins complain that they executed the contract based on a statement that Weaver made in a meeting prior to their signing the cost-plus contract that construction costs for their driveway would not exceed an approximate sum of $60,000. According to the Tobins, Weaver deliberately misled them with his statement, and this misleading statement led them to execute the contract with Weaver.

*No Evidence Supports the Fraud Judgment*

In five issues, Weaver argues that the evidence was legally and factually insufficient

4

to support the fraud judgment and damage award of $245,957.23, that the Tobins ratified the contract, and that, if fraud was committed, it was committed by Weaver Interests, not Weaver. We begin by addressing Weaver's first, second, and fifth issues, in which he challenges the sufficiency of the evidence to support the fraud judgment.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the judgment being reviewed. *Id.* at 827-28. There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists to support a finding if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.*

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985).

A fraud cause of action requires: (1) a material misrepresentation, (2) which was

5

false, (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Here, the Tobins' theory of fraudulent inducement is that they were tricked into signing the cost-plus contract by Weaver's representation that the cost of their driveway would not exceed approximately $60,000. To prove their case, the Tobins were required to establish that Weaver made a representation of fact that he could perform a specified amount of work (i.e. construct a specified project) for the approximate sum of $60,000. *See Formosa Plastics Corp.*, 960 S.W.2d at 48. Additionally, the Tobins were required to establish that, at the time Weaver made the representation regarding a $60,000 driveway, he knew the statement to be false or he asserted it without knowledge of its truth, he made it with the purpose of deceiving them, and he made it with no intention of delivering the promised act. *See id.* Further, the Tobins were required to prove that they actually and justifiably relied upon the representation. *Ernst & Young, L.L.P.*, 51 S.W.3d at 577. After a careful review of the record, we conclude that the record contains legally insufficient evidence to establish one of the required elements.

**The testimony**

Much of the testimony in this case, at least on the relevant points, is provided in narrative fashion, which serves to obfuscate the timing and sequence of events. The Tobins' case is built upon the following segments of testimony which reflect the entirety of the evidence regarding the representations about which the Tobins complain.

6

Q.   Did you discuss the budget?

A.   We talked about different things because we talked about three different projects, really. I would describe it as the auto park driveway area, the shop area and then the remodeling. My wife and I discussed how much we would consider spending putting [sic] into the house, since it was already a built house. And we were talking initially . . . It would be roughly $300,000 is what we were hoping to do for everything. And we were unfamiliar with the building project and sometimes those go up, but that was our initial expectation.

Q.   Did you discuss a budget for any particular phase of construction?

A.   Well, because the first phase, which we felt needed to get done before anything else got started would be the driveway area. We had talked with a friend of ours would had [sic] spent $60,000 on a driveway. And we told this to Mr. Weaver. He said, well, that was just way too much. I can do it for a lot less than that. And that gave us the encouragement that we could possibly make these improvements to the house within our budget.

Q.   Do you remember any of his exact words?

A.   He said, I can do it for cheap, cheap, cheap. I can do it fast and I can do it quick.


Similarly, when questioned about the budget, Ms. Tobin testified as follows:


Q.   Did [Mr. Weaver] ever quote you a budget to build the auto park?

A.   He had made the statement when we had talked about a friend of ours who had spent 60,000 on driveway that that would be too much.

Q.   Was that figure ever put in any kind of written estimate?

A.   No, it was not, but we kind of took it as kind of ballpark idea as to where this would go.


Ms. Tobin further testified:

7

Q. And, just for clarification of this jury, Mr. Weaver never told you that he could do the auto park for $60,000, did he?

A. Not our specific auto park. He said $60,000 would be too much. When in reference to the conversation we had about someone else who had built this driveway, that would be too much.

As to the signing of the cost-plus contract, Mr. Tobin testified:

Q. Why did you decide to do a cost-plus contract for construction of the auto park and turnaround area?

A. Well, it's a difficult site to begin with. It was a steep hillside. And according to Mr. Weaver, we didn't know what kind of foundation it would need because we didn't know if we would need solid rock or if we would need, if I recall, some sort of concrete footings. So the idea was to clear off some of the brush, dig down to the foundation of the stones and see what kind of base we needed for the driveway. So it was kind of hard to anticipate in advance until you actually did some work.

Initially we note that the record contains no testimony to establish that Weaver made a specific representation that he could construct the driveway the Tobins desired for $60,000. In fact, there is no testimony establishing that Weaver said he could build any driveway for $60,000. The Tobins contend, however, that, based on the comments Weaver did make, one can infer a specific representation by Weaver that he could construct the driveway they ultimately wanted built for approximately $60,000.

The record establishes that the Tobins met with Weaver at their property and discussed with him, on several occasions and in general terms, their ideas for modifications to their home and driveway. It is undisputed that the parties signed a cost-plus contract before there was any agreement or representation by anyone as to the ultimate scope or design of the project. Also

8

established is the fact that, soon thereafter, Weaver began work on a driveway even though neither party had a specific design, scope of work, or final product in mind at the time. Weaver continued to work on the project until he was fired by the Tobins. The key question is whether the Tobins established that, in the course of their conversations with Weaver, they described the product they desired to have constructed before Weaver made the alleged misrepresentation. Such a description is critical if Weaver is to be held responsible for having falsely represented the anticipated construction costs of the desired driveway.

A home builder very well might accurately represent to a prospective home owner that a home could be built for $60,000. However, if the builder envisions a 600 square foot frame home at the time he makes the representation, he cannot be charged with falsely representing the likely costs simply because the prospective owner assumes that the builder is speaking about a 2,000 square foot brick home. Absent evidence that the $60,000 representation is made with reference to the desired product, there is no evidence of a false statement.

In the context of this case, the falsity of any statement by Weaver necessarily depends upon the Tobins' establishing that they described and Weaver understood the specific product to be constructed and that the product could not be built for approximately $60,000. Absent evidence that he had knowledge of a specific project upon which to base an estimate, Weaver cannot be found to have made a false representation, much less to have had knowledge of the falsity of any representation that he may have made.

A close examination of the testimony reveals that, at most, it establishes only that Weaver may have, at some point, essentially, represented: "I can build a driveway for $60,000," not

9

"I can build the driveway you may finally decide you want for $60,000." The fact that Mr. Tobin elicited from Weaver a comment that a driveway could be built for $60,000 does not establish that Weaver was, in fact, representing that a particular driveway, as yet unidentified by the parties, could be constructed for that amount.

There is simply no evidence that the statement made by Weaver regarding a $60,000 driveway was, in fact, a reference to a particular driveway and auto park ultimately contemplated by the Tobins. We find no evidence that the Tobins, in the course of their meetings with Weaver, described or even themselves understood the specific product they sought at the time the cost-plus contract was signed. In fact, the Tobins acknowledged that until preliminary work was done at the site, none of the parties knew what the scope of the work would be. Further, despite the Tobins' contention that they understood Weaver's statement to be a $60,000 bid or estimate, they subsequently signed a cost-plus contract that made no mention of this $60,000 bid or estimate. Accordingly, the Tobins have failed to establish an essential element of fraud—that Weaver made a materially false statement. *See Formosa Plastics Corp., USA*, 960 S.W.2d at 47.

Even viewing all the evidence of fraud in the light most favorable to the verdict, we conclude that, as a matter of law, there was no evidence that Weaver made a false representation of material fact. Having found no evidence of this element of fraud, we need not address Weaver's additional points of error. We reverse and render judgment in favor of Weaver.

### *No Attorney's Fees Where No Judgment Under the DTPA*

In their cross-appeal, the Tobins argue that the district court erred in refusing to award attorney's fees for their breach of contract and DTPA claims against Weaver Interests. The Tobins

10

contend that, even though the court entered no judgment against Weaver Interests, the jury's verdict supports an award of attorney's fees for DTPA violations. We disagree.

The language used in the governing statute dictates whether the trial court has any discretion in awarding attorney's fees or whether recovery is mandatory. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). The DTPA provides that a "consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." Tex. Bus. & Com. Code Ann. § 17.50(d) (West Supp. 2006). Statutes providing that a party "may recover," "shall be awarded," or "is entitled to" attorney fees are not discretionary. *Bocquet*, 972 S.W.2d at 20. Because a consumer in an action brought under the DTPA "shall be awarded" attorney's fees, recovery of attorney's fees is mandatory. Accordingly, the inquiry is not whether the trial court abused its discretion but whether, as a matter of law, attorney's fees are available under the statute. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). As a question of law, we review the award of attorney's fees de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) ("Matters of statutory construction are questions of law for the court to decide.").

The Tobins are seeking recovery for breach of contract and DTPA violations from one defendant, Weaver Interests, and for fraud from the other, Evans P. Weaver. The Tobins seek to recover on separate, not alternative, theories of recovery. For these two separate defendants, the cases were separately pleaded and separately proved, and separate verdicts were returned by the jury. Because the Tobins prevailed against both defendants for the same harm, an award of actual damages against each would have been a double recovery, and the evidence supported the conclusion that the Tobins would be made whole with one recovery of $245,957.23. Rather than taking judgments

against both defendants, however, the Tobins took a judgment against Weaver only. No judgment was entered against Weaver Interests.

In arguments before the trial court, Weaver Interests argued that a plaintiff cannot elect to recover actual damages for fraud from one defendant and attorney's fees under the DTPA from another. To support its contentions, Weaver Interests relied chiefly on *JHC Ventures, L.P. v. Fast Trucking, Inc.*, 94 S.W.3d 762, 774-76 (Tex. App.—San Antonio 2002, no pet.), and *Foley v. Parlier*, 68 S.W.3d 870, 882-83 (Tex. App.—Fort Worth 2002, no pet.). In both cases, plaintiffs sought to recover damages for both breach of contract or breach of warranty and fraud from each defendant. According to those courts, although a party is entitled to sue and seek damages on alternative theories, he is not entitled to recover on both theories; to do so is equivalent to a double recovery. *Id.*; *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998). Even though the amounts and elements found under each theory of recovery appear different, they are alternative remedies for the same injuries. *Id.* Awarding damages for either theory would make the plaintiff whole; therefore, awarding both would amount to an impermissible double recovery. *Id.*

In the instant case, the Tobins seek to recover actual damages only once and from only one defendant. Because the parties determined that recovering actual damages from both defendants would amount to a double recovery, the Tobins elected to recover actual damages from Weaver only. The attorney's fees they seek to recover are additional costs that they are statutorily entitled to recover if they are prevailing plaintiffs under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50(d). The cases cited by Weaver Interests involve a double recovery of actual damages

12

and do not support Weaver Interests' argument. *See JHC Ventures, L.P.*, 94 S.W.3d at 774-76; *Foley*, 68 S.W.3d at 882-83.

Cases cited by the Tobins to support their position that attorney's fees should be awarded are equally inapplicable here. The Tobins rely chiefly on *McKinley v. Drozd*, 685 S.W.2d 7 (Tex. 1985). In *McKinley*, the supreme court explained that to "prevail" under the DTPA means "to prevail in a claim under the Act, rather than to obtain a net recovery on all claims joined in one lawsuit." 685 S.W.2d 7, 9 (Tex. 1985). Accordingly, the supreme court awarded attorney's fees for DTPA violations even where the plaintiffs' recovery on DTPA claims was offset by opposing claims. *Id.* at 10. Even though the offset resulted in no net recovery for the DTPA plaintiffs, they were prevailing parties because the jury awarded them damages on their DTPA claim. *Id.* at 9. The fact that the defendant had also recovered damages on an opposing claim did not negate the DTPA verdict. *Id.* at 9. Acknowledging the legislature's mandate to liberally construe the DTPA, the court reasoned that the "sensible meaning of the word 'prevail' is to prevail in a claim under the Act, rather than to obtain a net recovery on all claims joined in one lawsuit." *Id.* at 9.

In *McKinley*, as in the other cases cited by the Tobins, even where plaintiffs had no net recovery under the DTPA or where the plaintiffs were allowed to recover common law damages plus statutory attorney's fees, judgment was entered against the party from whom the plaintiffs recovered. *Id.* at 7; *see, e.g.*, *Service Lloyds Ins. Co. v. Greenhalgh*, 771 S.W.2d 688, 695 (Tex. App.—Austin 1989), rev'd on other grounds, 787 S.W.2d 938 (Tex. 1990) (allowing common law punitive damages and statutory attorney's fees because separate awards were for separate bad acts; court entered judgment on the verdict); *Orkin Exterminating Co., Inc. v. Williamson*,

785 S.W.2d 905, 913 (Tex. App.—Austin 1990, writ denied) (allowing recovery for both common law negligence and DTPA violations because plaintiff obtained separate findings of actual damages on each theory of recovery and evidence showed no double recovery; judgment rendered on jury's verdict). Here, no judgment was entered against Weaver Interests. Plaintiffs cannot be said to have prevailed against a party when there is no judgment against that party. *See Dear v. City of Irving*, 902 S.W.2d 731, 739 (Tex. App.—Austin 1995, writ denied) (explaining that a prevailing party is one who is vindicated by the judgment rendered); *Hasty Inc. v. Inwood Buckhorn Joint Venture*, 908 S.W.2d 494, 502 (Tex. App.—Dallas 1995, writ denied) (same); *Mixon v. National Union Fire Ins. Co.*, 806 S.W.2d 332, 335 (Tex. App.—Fort Worth 1991, writ denied) ("A 'successful party' is one who obtains a judgment of a competent court vindicating a civil claim of right"). Even considering the instructions of the legislature that the DTPA be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection," Tex. Bus. & Com. Code Ann. § 17.44(a) (West 2002), we are unable to award attorney's fees where no judgment was entered.

Because no judgment was entered against Weaver Interests, we conclude that the Tobins were not prevailing parties under the DTPA and not entitled to recover attorney's fees from Weaver Interests. We overrule the Tobins' issues.

**CONCLUSION**

Having reviewed the evidence presented at trial, we conclude there was no evidence to support the jury's fraud verdict against Weaver. We further conclude that the Tobins were not

14

prevailing parties against Weaver Interests under the DTPA and, therefore, not entitled to an award of attorney's fees against Weaver Interests.

We reverse and render the district court's fraud judgment. We affirm the district court's judgment denying attorney's fees.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear;
    Dissenting Opinion by Justice Patterson

Affirmed in part; Reversed and Rendered in part

Filed:  July 18, 2008